Carmello V. FUENTES, Defendant below,
Appellant,

v.

STATE of Delaware, Plaintiff below,
Appellee.

Supreme Court of Delaware.

Submitted Sept. 10, 1975.

Decided Oct. 14, 1975.

Revised Nov. 25, 1975.

Arlen B. Mekler, Asst. Public Defender, Wilmington, for defendant below, appellant.

Peter J. Bosch, John X. Denny, Jr., and David H. Erisman, Deputy Attys. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice.

In this murder case, the determinative issue is the constitutionality of 11 Del.C. § 641.[1]

---

1.  11 Del.C. § 641 provides:
"§ 641. Extreme emotional distress.
    "The fact that the accused intentionally caused the death of another person under the influence of extreme emotional distress is a mitigating circumstance, reducing the crime of murder in the first degree as defined by § 636 of this Criminal Code to the crime of manslaughter as defined by § 632 of this Criminal Code. The fact that the accused acted under the influence of extreme emotional distress must be proved by him by a preponderance of the evidence. The accused must further prove by a preponderance of the evidence that there is a reasonable explanation or excuse for the existence of the extreme emotional distress. The reasonableness of the explanation or excuse shall be determined from the viewpoint of a reasonable person in the accused's situation under the circumstances as he believed them to be."

### I.

The defendant was charged with murder in the first degree, 11 Del.C. § 636.[2] The jury found the defendant guilty of murder in the second degree, 11 Del.C. § 635.[3] The sentence was life imprisonment.

Extreme emotional distress was considered a defense of mitigation in this case by virtue of § 641. This appeal is founded solely upon the ground that the Trial Judge instructed the jury, under § 641, that the "law provides that what would otherwise be murder in the first degree would be manslaughter [4] if the accused acted under extreme emotional distress"; but that no similar instruction was given as to murder in the second degree. The defendant contended that principles of statutory construction applicable to § 641, due process of law, and equal protection of the laws all require that the "mitigating circumstance" of extreme emotional distress be available to a defendant charged with murder in the second degree as well as to a defendant charged with murder in the first degree.

The State relied squarely upon the unambiguous language of § 641.

### II.

The issue has been resolved for us by the recent decision of the United States Supreme Court in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). That case was decided after the trial of the instant case; thus, neither the trial judge nor trial counsel had the benefit of it.

In *Mullaney*, the law of the State of Maine required a defendant charged with murder (which upon conviction carried a mandatory sentence of life imprisonment) to prove by a preponderance of the evidence that he acted in the heat of passion on sudden provocation in order to reduce the homicide to manslaughter (in which case the punishment was fine or imprisonment not exceeding 20 years). The Supreme Court held that the Maine rule did not meet the requirement of the Due Process Clause of the Fourteenth Amendment

---

2. 11 Del.C. § 636 provides:
"§ 636. Murder in the first degree; class A felony.
"A person is guilty of murder in the first degree when:
(1) He *intentionally* causes the death of another person; or
(2) In the course of and in furtherance of the commission or attempted commission of a felony or immediate flight therefrom, he recklessly causes the death of another person; or
(3) He intentionally causes another person to commit suicide by force, duress or deception.
"Murder in the first degree is a class A felony, and is punished as provided in § 4209 of this Criminal Code."

3. 11 Del.C. § 635 provides:
"§ 635. Murder in the second degree; class A felony.
"A person is guilty of murder in the second degree when:
(1) He recklessly causes the death of another person under circumstances which manifest a cruel, wicked, and depraved indifference to human life; or
(2) In the course of and in furtherance of the commission or attempted commission

of a felony or immediate flight therefrom, he causes the death of another person.
"Murder in the second degree is a class A felony."

4. 11 Del.C. § 632 provides:
"§ 632. Manslaughter; class B felony.
"A person is guilty of manslaughter when:
(1) He recklessly causes the death of another person; or
(2) With *intent* to cause serious *physical* injury to another person he causes the death of such person, employing means which would to a reasonable man in the defendant's situation, knowing the facts known to him, seem likely to cause death; or
(3) He intentionally causes the death of another person under circumstances which do not constitute murder because he acts under the influence of extreme emotional distress; or
(4) He commits upon a female an abortion which causes her death, unless such abortion is a therapeutic abortion and the death is not the result of reckless conduct; or
(5) He intentionally causes another person to commit suicide.
"Manslaughter is a class B felony."

that the prosecution must prove beyond a reasonable doubt every fact necessary to constitute the crime charged; that to satisfy that requirement, the prosecution must prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented.

In *Mullaney*, after reviewing the history of common law homicide and the burden of proof problem here under consideration,[5] the Court stated:

"This historical review establishes two important points. First, the fact at issue here—the presence or absence of the heat of passion on sudden provocation— has been, almost from the inception of the common law of homicide, the single most important factor in determining the degree of culpability attaching to an unlawful homicide. And, second, the clear trend has been toward requiring the prosecution to bear the ultimate burden of proving this fact." 421 U.S. at 696, 95 S.Ct. at 1888, 44 L.Ed.2d at 518.

The rationale of *Mullaney* appears as follows:

" * * * [T]he criminal law of Maine, like that of other jurisdictions, is concerned not only with guilt or innocence in the abstract but also with the degree of criminal culpability. Maine has chosen to distinguish those who kill in the heat of passion from those who kill in the absence of this factor. Because the former are less 'blameworth[y],' *State v. Lafferty,* 309 A.2d at 671, 673 (concurring opinion), they are subject to substantially less severe penalties. By drawing this distinction, while refusing to require the prosecution to establish beyond a reasonable doubt the fact upon

which it turns, Maine denigrates the interests found critical in *Winship*." 421 U.S. at 697–698, 95 S.Ct. at 1889, 44 L.Ed. 2d at 519.

\* \* \* \* \* \*

"It has been suggested * * * that because of the difficulties in negating an argument that the homicide was committed in the heat of passion the burden of proving this fact should rest on the defendant. No doubt this is often a heavy burden for the prosecution to satisfy. The same may be said of the requirement of proof beyond a reasonable doubt of many controverted facts in a criminal trial. But this is the traditional burden which our system of criminal justice deems essential.

\* \* \* \* \* \*

"Nor is the requirement of proving a negative unique in our system of criminal jurisprudence. Maine itself requires the prosecution to prove the absence of self-defense beyond a reasonable doubt. * * * Satisfying this burden imposes an obligation that, in all practical effect, is identical to the burden involved in negating the heat of passion on sudden provocation. Thus, we discern no unique hardship on the prosecution that would justify requiring the defendant to carry the burden of proving a fact so critical to criminal culpability.

\* \* \* \* \* \*

"Maine law requires a defendant to establish by a preponderance of the evidence that he acted in the heat of passion on sudden provocation in order to reduce murder to manslaughter. Under this burden of proof a defendant can be given a life sentence when the evidence indicates that it is *as likely as not* that

5. The Court pointed out that "in the past half century, the large majority of States have abandoned *York* [*Commonwealth v. York,* 50 Mass. (9 Met.) 93 (1845), wherein it was held that the defendant was required to negate malice aforethought by proving by a preponderance of the evidence that he acted in

the heat of passion] and now require the prosecution to prove the absence of the heat of passion on sudden provocation beyond a reasonable doubt"; also, that the latter rule now prevails in England. 421 U.S. at 696, 95 S.Ct. at 1888, 44 L.Ed.2d at 518.

he deserves a significantly lesser sentence. This is an intolerable result in a society where, to paraphrase Mr. Justice Harlan, it is far worse to sentence one guilty only of manslaughter as a murderer than to sentence a murderer for the lesser crime of manslaughter. * * * We therefore hold that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." 421 U.S. at 701–704, 95 S.Ct. at 1891–92, 44 L.Ed.2d at 521–22 (emphasis in text).

The term "extreme emotional distress", established as a mitigating circumstance by § 641, is a substitute for our prior common law defense of "provocation". See Delaware Criminal Code, Commentary on §§ 632, 641; compare *State v. Winsett*, Del. Super., 8 Storey 111, 205 A.2d 510, 516 (1964).[6] Here, as in Maine, there is a wide divergence in the penalty provisions for homicide offenses: for first degree murder, the penalty may be death or life imprisonment [11 Del.C. § 4209]; for second degree, mandatory life imprisonment [11 Del.C. § 4205(b)(1)]; and for manslaughter, 3 to 30 years [11 Del.C. § 4205(b)(2)]. Thus, under § 641, as in *Mullaney*, the degree of culpability, rather than guilt or innocence, is at stake. Neither involved an "affirmative defense" in the full sense of the term, *i. e.*, a defense that might lead to acquittal. And the burden of proof imposed upon the defendant was substantially the same under Maine law and § 641. Thus, the analogy between Maine law, stricken down by *Mullaney*, and our § 641 is unmistakable.

The State contends that *Mullaney* is inapplicable here because under Maine law, as contrasted with ours, "all intentional or

criminally reckless homicides were felonious homicides—a single offense of which murder and manslaughter merely constituted categories of punishment." In our view, neither the rationale nor the conclusion of *Mullaney* is made inapplicable in the instant case for that reason. *See People v. Balogun*, N.Y.Supr., 372 N.Y.S.2d 384 (1975). The State relies upon *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L. Ed. 1302 (1952), referred to in the concurring opinion in *Mullaney*. In *Leland*, the Court declined to apply to the states the specific holding of *Davis v. United States*, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895), which rejected the rule of *Commonwealth v. York*, 50 Mass. (9 Met.) 93 (1845), in federal prosecutions concerning insanity defenses. The State's reliance on *Leland* in an extreme emotional distress case is misplaced in view of the explicit holding of *Mullaney*.

■ Accordingly, we hold that all of § 641 except the first sentence must fall as being violative of the Due Process Clause.

This question remains: may the first sentence of the Section be severed and stand alone? We think not.

■ It is our opinion that, beyond doubt or question, the General Assembly would not have enacted the first sentence of § 641 alone without the remainder of the Section. See 1 Del.C. §§ 301, 308; *State v. Dickerson*, Del.Supr., 298 A.2d 761 (1972); Delaware Criminal Code, Commentary on § 641. Standing alone, the first sentence of § 641 is merely repetitious of § 632(3) and no useful purpose would appear therefor. We conclude that the first sentence of § 641 must fall with the remainder.

6. Compare *People v. Balogun*, N.Y.Supr., 372 N.Y.S.2d 384 (1975), holding that New York Penal Code provisions, analogous to § 641, were invalidated by *Mullaney*, notwithstanding the differences between the laws of Maine and New York.

Accordingly, we hold that § 641 is wholly unconstitutional and invalid under *Mullaney*.[7]

### III.

Without § 641, evidence of extreme emotional distress in a murder case becomes simply a matter of evidence tending, under § 302(b)[8] of the Code, to negate the existence of an essential element of murder of either degree, reducing it to manslaughter under § 632. It is not a "defense", within the provisions of § 303,[9] prescribing the burden of proof as to defenses because, without § 641, it is no longer a "defense defined by this code or by another statute".

■ Governed as it now will be by § 302(b), the introduction by the defendant of credible evidence of extreme emotional distress entitles him "to a jury instruction that the jury must consider whether the evidence raises a reasonable doubt as to the defendant's guilt." In the language of the Commentary on § 302, subsection (b)

> "permits the defendant to raise any evidence he has tending to negate an element of the offense, and, if the evidence is credible (*i. e.*, suitable to be considered by the jury), he is entitled to a jury instruction that there is no burden on the defendant other than that of raising a reasonable doubt, and his evidence may be

viewed, if believed, as raising such a doubt."

Compare *Hamilton v. State,* Del.Supr., 343 A.2d 594 (1975).

■ We have concluded that credible evidence of extreme emotional distress tends to negate an essential element of each degree of murder, reducing the offense to manslaughter, by reason of the provisions of § 632 defining the scope of manslaughter. As to murder in the first degree, § 632(3) is explicit in this respect in that an intentional killing, which would otherwise be murder in the first degree under § 636(a)(1), becomes manslaughter if the offender causes the death "under circumstances which do not constitute murder because he acts under the influence of extreme emotional distress". As to murder in the second degree, extreme emotional distress and the essential element of "cruel, wicked, and depraved indifference to human life" [§ 635(1)] are mutually and totally inconsistent and irreconcilable. The presence of one excludes the other, in our opinion. Thus, upon a finding of extreme emotional distress, the "cruel, wicked, and depraved" essential element of murder in the second degree has been negated, leaving only the element of a reckless killing, thus reducing the offense to manslaughter. One who "recklessly causes the death of another person" is guilty of

---

7. It is emphasized that neither *Mullaney* nor the instant case involved the constitutionality of affirmative defenses *per se.* Compare *People v. Long,* N.Y.Supr., 372 N.Y.S.2d 389 (1975). We do not decide that question.

8. § 302(b) provides:
"§ 302. Jury instruction for defendant on reasonable doubt.
    \*     \*     \*     \*     \*
  "(b) The defendant may produce whatever evidence he has tending to negate the existence of any element of the offense, and, if the court finds that a reasonable juror might believe that evidence, the defendant is entitled to a jury instruction that the jury must consider whether the evidence raises a reasonable doubt as to the defendant's guilt."

9. § 303 provides:
"§ 303. Credible evidence to support defenses.
  "(a) No defense defined by this code or by another statute may be considered by the jury unless the court is satisfied that some credible evidence supporting the defense has been presented.
  "(b) Evidence supports a defense when it tends to establish the existence of each element of the defense.
  "(c) If some credible evidence supporting a defense is presented, the defendant is entitled to a jury instruction that the jury must acquit him if they find that the evidence raises a reasonable doubt as to the defendant's guilt."

manslaughter under § 632(1). Thus, the unexplained distinction between first and second degree murder made in § 641 is removed, and the due process and equal protection problems raised by the defendant are resolved. The statutory construction here made is consonant with the rules of construction set forth in 11 Del.C. § 203.[10]

■ Accordingly, we hold that the jury instruction here under attack was prejudicial error and the judgment below must be reversed and the cause remanded.

### IV.

■ But we are not convinced that justice requires a new trial. The thrust of the defendant's appeal is not that he was deprived of a complete defense to the charge of murder, but that he was deprived of a defense of mitigation which would have afforded him the opportunity of a manslaughter verdict. Thus, judgment of manslaughter, a lessor offense included within murder in the second degree under 11 Del. C. § 206(b)(3),[11] and sentence thereon, would seem to resolve in the defendant's favor the sole issue raised by him on this appeal.

With the concurrence of both the State and the defendant, we so hold.

### V.

■ This decision will be given prospective application only,[12] the determinative date being the date on which the unconstitutionality of § 641 was publicly announced by this Court: September 29, 1975.[13] This decision will apply only to: (1) this case; (2) any case now pending on appeal to this Court;[14] (3) any other case tried prior to September 29, 1975 which has not yet been appealed but which may be eligible for direct appeal to this Court;[15] (4) the case of *State v. Richardson* (Del. Super. #I–75–02–0947–0951); and (5) any

---

10. 11 Del.C. § 203 provides:

"§ 203. Principles of construction.

"The general rule that a penal statute is to be strictly construed does not apply to this Criminal Code, but the provisions herein must be construed according to the fair import of their terms to promote justice and effect the purposes of the law, as stated in § 201 of this Criminal Code."

11. 11 Del.C. § 206(b)(3) provides:

"(b) A defendant may be convicted of an offense included in an offense charged in the indictment or information. An offense is so included when:

\* \* \* \* \*

"(3) It involves the same result but differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission."

12. The question of prospective application of a decision is presented when the decision "constitute[s] a sharp break in the line of earlier authority or an avulsive change which caused the current of the law thereafter to flow between new banks." *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 499, 88 S.Ct. 2224, 2234, 20 L.Ed.2d 1231,

1244 (1968). The instant case meets that test. Compare Mr. Justice Brennan's dissent in *U. S. v. Peltier*, 422 U.S. 531, 544, 95 S. Ct. 2313, 2321, 45 L.Ed.2d 374, 385 (1975).

13. In order to assist the Trial Judge and counsel in *State v. Richardson* (Del.Super. # I–75–02–0947–0951), a capital case then in progress involving evidence of extreme emotional distress, we announced on September 29, 1975 that in this opinion we would hold § 641 unconstitutional under *Mullaney*.

14. The United States Supreme Court has consistently given the benefit of a criminal procedural prospective decision to the defendant in whose case the principle was announced. See *United States v. Peltier*, 422 U.S. at 542 n. 12, 95 S.Ct. at 2320 n. 12, 45 L.Ed.2d at 384 n. 12 (1975). And as the Court has recognized, applying a decision only prospectively can entail inequity to others whose cases are up on direct review but are held pending determination of the case selected for decision. *Stovall v. Denno*, 388 U.S. 293, 301, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967).

15. Thus excluding habeas corpus or other post-conviction proceedings and appeals therefrom.

trial commenced after September 29, 1975.[16] *See Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Johnson v. State of New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Williams v. United States,* 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L. Ed.2d 374 (1975).

\* \* \* \* \* \*

Reversed and remanded with direction to strike the judgment of conviction of murder in the second degree and sentence thereon, and to enter a judgment of conviction of manslaughter and sentence thereon.

16. This was the course followed in the application of *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). See *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). In reaching this conclusion, we have considered the purpose of the rule here enunciated, the propriety of past reliance upon § 641 by law enforcement officers, and the effect on the "administration of justice and the integrity of the judicial process" of a retrospective application of the rule of this case. *Linkletter v. Walker,* 381 U.S. at 637, 85 S.Ct. at 1742, 14 L.Ed.2d at 613.