**Michael A. McCARTHY, Defendant below, Appellant,**

**v.**

**STATE of Delaware, Plaintiff below, Appellee.**

Supreme Court of Delaware.

Submitted Jan. 19, 1977.

Decided Feb. 9, 1977.

Carl Schnee and David E. Brand, of Schnee & Castle, Wilmington, for defendant below, appellant.

Edward C. Pankowski, Jr., Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, Chief Justice, DUFFY and McNEILLY, Justices.

HERRMANN, Chief Justice:

The defendant was convicted on two counts of rape in the first degree [11 *Del.C.* § 764]; [1] one count of attempted rape in the first degree [11 *Del.C.* § 531]; [2] and one count of kidnapping in the second degree [11 *Del.C.* § 783].[3] He appeals on several grounds, including (1) the Trial Judge's fail-

1. 11 *Del.C.* § 764 provides that:

"A male is guilty of rape in the first degree when he intentionally engages in sexual intercourse with a female without her consent, and

"(1) In the course of the offense he inflicts serious physical, mental or emotional injury upon the victim; or

"(2) The victim was not the defendant's voluntary social companion on the occasion of the crime and had not previously permitted him sexual contact."

2. 11 *Del.C.* § 531 provides that:

"A person is guilty of an attempt to commit a crime if he:

"(1) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; or

"(2) Intentionally does or omits to do anything which, under the circumstances as he believes them to be, is a substantial step in a course of conduct planned to culminate in his commission of the crime."

3. 11 *Del.C.* § 783 provides in part:

"A person is guilty of kidnapping in the second degree when he unlawfully restrains another person with any of the following purposes:

* * * * * *

"(4) To inflict physical injury upon [her], or to violate or abuse [her] sexually; . . . and the actor voluntarily releases the victim

ure to instruct the jury on the doctrine of "diminished responsibility" ; and (2) the unconstitutionality of 11 *Del.C.* § 403,[4] Delaware's Statute dealing with the commitment of a defendant upon a verdict of "not guilty by reason of insanity."

The charges and conviction stem from three separate incidents; upon the defendant's application, based upon his intent to assert insanity as an affirmative defense,[5] all four charges were tried together. At trial, although admitting the offenses, the defendant pleaded not guilty and produced expert testimony addressed to the defense of insanity. The jury returned guilty verdicts on all four charges, and the defendant was sentenced to four concurrent life sentences.

I.

As to the defendant's contention that the Trial Court erred in failing to charge the jury on the doctrine of "diminished responsibility", the basic theory underlying the doctrine can be stated as follows:

> [S]ince certain crimes, by definition, require the existence of a specific intent, any evidence relevant to the existence of that intent, including evidence of an abnormal mental condition not constituting legal insanity, is competent for the purpose of negating that intent. . . . [Thus] the actual purpose of such evidence is to establish, by negating the requisite intent for a higher degree of the offense, that in fact a lesser degree of the offense was committed.

*Annot.*, 22 A.L.R.3d 1228, 1238 (1968). It is fundamental that the doctrine of diminished responsibility is not intended to supplant the test of mental illness; it is only after a defendant has been determined to be "criminally responsible" for his actions, *i. e.* legally sane, that the doctrine has been considered applicable to determine the degree of the offense for which he will be held responsible.

There is a broad spectrum of judicial opinion as to the acceptability of medical testimony adduced for the purpose of establishing such diminished responsibility. The contrariety of judicial reaction has ranged from total inadmissibility, [*Commonwealth v. Fleming*, 360 Mass. 404, 274 N.E.2d 809 (1971); *State v. Malumphy*, 105 Ariz. 200, 461 P.2d 677 (1969)] to admissibility for the purpose of negating an element of the offense charged and allowing conviction upon some lesser-included offense only [*United States v. Brawner*, 153 U.S.App.D.C. 1, 471 F.2d 969 (1972); *People v. Gorshen*, 51 Cal.2d 716, 336 P.2d 492 (1959)]. It appears that, "[t]he majority of courts which have held [medical evidence] admissible upon the issue of intent or mental state have permitted it [only] for the purpose of negating the premeditation or deliberation requirement to first degree murder." *Annot., supra* at 1232; see also *State v. DiPaolo*, 34 N.J. 279, 168 A.2d 401 (1961). No case has been brought to our attention in which the doctrine of diminished responsibility has been applied to statutory offenses such as are here involved.

alive, unharmed, and in a safe place prior to trial."

4. 11 *Del.C.* § 403 provides that:

"(a) Upon the rendition of a verdict of 'not guilty by reason of insanity,' the court shall, upon motion of the Attorney General, order that the person so acquitted shall forthwith be committed to the Delaware State Hospital.

"(b) A person committed to the Delaware State Hospital in accordance with subsection (a) shall be kept there until the Superior Court . . . is satisfied that the public safety will not be endangered by his release. The Superior Court shall without special motion reconsider the necessity of continued detention of a person thus committed after he has been detained for 1 year. It shall thereafter reconsider his detention upon motion on his behalf or whenever advised by the State Hospital that the public safety will not be endangered by his release."

5. 11 *Del.C.* § 401 provides in part:

"(a) In any prosecution for an offense, it is an affirmative defense that, at the time of the conduct charged, as a result of mental illness or mental defect, the accused lacked substantial capacity to appreciate the wrongfulness of his conduct or lacked sufficient willpower to choose whether he would do the act or refrain from doing it."

The doctrine of diminished responsibility was left an open question in this State in *Wierzbicki v. State*, Del.Supr., 293 A.2d 564 (1972), wherein the question presented here was not reached.[6] There, this Court cautioned, however, that the "question should be thoroughly considered before the practice is established for all criminal prosecutions of accepting such evidence which admittedly would not support the defense of insanity under the law of Delaware." *Id.* at 566–67.

Since *Wierzbicki*, the General Assembly specifically addressed the doctrine of diminished responsibility. In a proposed § 407 of the new Criminal Code, the doctrine was explicitly recognized;[7] prior to its effective date, however, the provision was repealed. See 59 Del.Law, c. 203, § 36. We find it unnecessary to speculate in this case upon the intent of the General Assembly in deleting the proposed § 407; sufficient for present purposes is our conclusion that the doctrine is inapplicable to the particular offenses for which the defendant in this case was charged.

Our rejection of the doctrine in the instant case is based primarily upon its basic inconsistency to the offenses here involved. As previously noted, the salient aspect of the diminished responsibility doctrine is that it does not relieve the defendant of criminal responsibility. Like "extreme emotional distress", it is a defense of mitigation only. *Fuentes v. State*, Del. Supr., 349 A.2d 1 (1975). Criminal responsibility exists, but only for an offense for which the general *mens rea* can be found. In practice under the doctrine, while conviction for an offense requiring a specific intent was foreclosed, conviction for a lesser-included crime, requiring only a general criminal intent, was not. This specific intent—general intent dichotomy explains not only the application of the doctrine in the first degree murder cases wherein the specific intent element of premeditation and deliberation are negated, see *State v. DiPaolo, supra; State v. Gramenz*, 256 Iowa 134, 126 N.W.2d 285 (1964), but also the seemingly more liberal application of the doctrine in cases such as assault and battery with intent to kill, *Bimbow v. State*, Ind. App., 315 N.E.2d 738 (1974); first degree forgery, requiring specific intent to defraud, *State v. Conklin*, 70 Wash.2d 805, 489 P.2d 1130 (1971); assault with intent to commit murder, *State v. Welsh*, 8 Wash. App. 719, 508 P.2d 1041 (1973); and entering a building with intent to commit theft, *People v. Taylor*, Cal.App., 33 Cal.Rptr. 654 (1963). In each of these instances, the requisite specific intent constituted an aggravating factor to an otherwise general *mens rea* offense and the doctrine was applied to permit a finding of the lesser offense.[8]

As the above cases illustrate, acceptance of the doctrine requires that there be some lesser-included offense which lacks the requisite specific intent of the greater offense charged. Otherwise, the doctrine of diminished responsibility becomes an impermissible substitute test of criminal responsibility. See *People v. Nance*, 23 Cal. App.3d 925, 102 Cal.Rptr. 266, 268–69 (1972).

In the instant case, there are no such lesser-included offenses within those for which the defendant was charged and tried. The acceptance of the doctrine in this case,

6. Because no medical testimony was presented in *Wierzbicki* (a kidnapping case), this Court held that diminished responsibility was not a proper matter for the Trial Court's consideration. *Wierzbicki v. State, supra*, at 566.

7. The proposed 11 *Del.C.* § 407 provided:

"In any prosecution for an offense which has an element of intention or knowledge, the defendant may prove as an affirmative defense by the testimony of a psychiatrist or other expert his inability, as a result of a mental illness or mental defect, to have the required state of mind at the time of the offense. He may, nevertheless, be convicted of any offense which he has committed requiring a state of mind which he was able to form."

8. We have referred to cases in which the doctrine has been applied to indicate why it is not acceptable here, even under the theory of those cases. This opinion should not be read as an acceptance of the doctrine of diminished responsibility under facts or in cases not before us.

therefore, would be inconsistent with the theory's basic purpose. Accordingly, we find no error in the Trial Judge's failure to instruct the jury on the doctrine of diminished responsibility.

II.

Defendant challenges the constitutionality of 11 *Del.C.* § 403(a) upon the ground that the provision for immediate and mandatory confinement upon a verdict of "not guilty by reason of insanity" is violative of both the Equal Protection and Due Process Clauses. This issue is not properly before us. The mandatory commitment provision of § 403(a) becomes operative only "upon the rendition of a verdict of 'not guilty by reason of insanity' ". In this case, the jury returned guilty verdicts on all four counts. Not being subject to the operation of § 403(a), the defendant lacks standing to raise these constitutional issues.

III.

The defendant alleges a number of additional grounds for reversal of his conviction. Among these are: (1) the Trial Court erred in not instructing the jury as to the disposition of a case under § 403 upon a finding of not guilty by reason of insanity; (2) the defendant should not have had the burden of proof as to the issue of mental illness; (3) the State's cross-examination of the defendant's character witness was prejudicial and improper; (4) the prosecutor committed error by informing the jury in his opening statement that the defendant would rely on the defense of mental illness; (5) the rebuttal testimony of the State's expert witnesses was improper; (6) there was insufficient evidence to support the conviction on one of the counts of rape.

We find each of these grounds of appeal to be without merit.

A.

This Court has recently had occasion to consider and reject allegations of error for failure to instruct the jury as to the ultimate disposition of a case pursuant to § 403 and for placing on the defendant the burden of proof as to the issue of mental illness. *Hand v. State*, Del.Supr., 354 A.2d 140 (1976); *Rivera v. State*, Del.Supr., 351 A.2d 561 (1976). These cases are dispositive, respectively, of defendant's contentions, and we adhere to them.

Similarly, on the issue of cross-examining a defense character witness, our decision in *DeJarnette v. State*, Del.Supr., 338 A.2d 117 (1975), upholding the wide discretion of the Trial Judge in ruling upon the permissible scope of such cross-examination, is dispositive. Upon the facts of this case, we cannot say that discretion was abused.

B.

The defendant contends that the examination of the defendant by the State psychiatrists improperly went beyond the guidelines established for such examinations in *State v. Mulrine*, Del.Super., 183 A.2d 831 (1962); particularly, that there was violation of the caveat that "[n]o attempt will be made to get admissions from [the] defendant or to determine his guilt or innocence." *Id.* at 833. The defendant argues that his being specifically asked about the incidents in question led to improper admissions. *Mulrine* is inapposite: unlike *Mulrine*, the defendant here admitted the offenses in question; only the issue of criminal responsibility remained to be resolved. Therefore, the need to protect the defendant's right against self-incrimination, as in *Mulrine*, is not here involved.

C.

The defendant argues that it was reversible error for the prosecutor to inform the jury in his opening statement that the defendant would rely upon the defense of mental illness. As authority for his assertion of error, the defendant cites *People v. Corsa*, 50 Mich.App. 479, 213 N.W.2d 579 (1973) wherein the Court stated that, "[w]hether a defendant's sanity is put in issue is a decision for the defense, and

the issue should not be raised by the prosecutor." *Id.* at 581. No case has come to our attention, however, wherein such action by the prosecutor was deemed sufficient to warrant a reversal. We apply the general rule that in order to secure a reversal based on an opening statement of the prosecutor, the accused is required to establish either bad faith on the part of the prosecutor or actual prejudice to the defendant's case. See, e. g., *Wilhelm v. State*, 272 Md. 404, 326 A.2d 707 (1974); *State v. Booton*, 114 N.H. 750, 329 A.2d 376 (1974), *cert. denied*, 421 U.S. 919, 95 S.Ct. 1584, 43 L.Ed.2d 787 (1975); *State v. Hipplewith*, 33 N.J. 300, 164 A.2d 481 (1960); *Commonwealth v. Russell*, 459 Pa. 1, 326 A.2d 303 (1974). The defendant has failed to make such requisite showing.

D.

Finally, we come to defendant's argument as to the insufficiency of the evidence to support his conviction on one of the counts of rape. Specifically, the defendant bases this contention on the inability of the victim to identify him as the assailant at a pre-trial police line-up. The trial record contains the victim's description of the assailant and identification of the defendant, a *modus operandi* common to all the charged offenses, and the defendant's admission of the particular acts in question. The test for sufficiency, as established in *Holden v. State*, Del.Supr., 305 A.2d 320 (1973) has been met.

Affirmed.