STATE of Delaware, Plaintiff,

v.

Francis C. MOYER, Defendant.

Supreme Court of Delaware.

Submitted Jan. 23, 1978.

Decided May 5, 1978.

Norman A. Barron, Chief Deputy Atty. Gen., Wilmington, for plaintiff.

John Williams and Harold Schmittinger of Schmittinger & Rodriguez, P.A., Wilmington, for defendant.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

This certification requires a review of *Fuentes v. State*, Del.Supr., 349 A.2d 1 (1975) in which this Court found 11 *Del.C.*

§ 641,[1] violative of the Due Process Clause and unconstitutional under *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

### I.

In *Fuentes*, this Court concluded that "the analogy between Maine law,[2] stricken down by *Mullaney*, and our § 641 is unmistakable" (349 A.2d at 5); and we concluded, therefore, that the question of the invalidity of § 641 was settled by the rationale and decision in *Mullaney*.

But since then, the United States Supreme Court has shed further enlightenment upon the scope and meaning of *Mullaney*. In *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) the Court upheld as distinguishable from *Mullaney* a New York statutory scheme, governing the offenses of murder and manslaughter, so similar to ours that we granted certification of the following questions:

"1. Does not *Patterson v. New York*, [432] U.S. [197], 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), resurrect 11 Del.C. § 641?

"A. Are there not two elements of the crime of Murder 1st degree in violation of 11 Del.C. § 636(1) in Delaware, to wit: (1) 'intent' to cause the death of another person, and (2) causing the death of another person?

"B. If the answer to A is yes, are not, under 11 Del.C. § 636(1), the death, the intent to kill, and causation the only facts the State need prove beyond a reasonable doubt if a person is to be convicted of Murder in the 1st degree?

"C. If the answer to B is yes, is it not also true that 11 Del.C. § 641 did nothing to shift the State's burden, but, rather, merely provide a vehicle by which a defendant could demonstrate a mitigating circumstance and thus reduce what would ordinarily be Murder in the 1st degree to Manslaughter?

"D. If the answer to C is yes, should not the Courts of Delaware overrule the decision of *Fuentes v. State, supra,* in light of *Patterson v. New York, supra.*"

### II.

The pertinent provisions of the New York Statutes upheld in *Patterson* are as follows:

"§ 125.25 Murder in the second degree

"A person is guilty of murder in the second degree when:

"1. With intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution under this subdivision, it is an affirmative defense that:

"(a) The defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. Nothing contained in this paragraph shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

\*   \*   \*   \*   \*   \*

1. 11 *Del.C.* § 641 provides:

"§ 641. Extreme emotional distress.

"The fact that the accused intentionally caused the death of another person under the influence of extreme emotional distress is a mitigating circumstance, reducing the crime of murder in the first degree as defined by § 636 of this Criminal Code to the crime of manslaughter as defined by § 632 of this Criminal Code. The fact that the accused acted under the influence of extreme emotional distress must be proved by him by a preponderance of the evidence. The accused must further prove by a preponderance of the evidence that there is a reasonable explanation or excuse for the existence of the extreme emotional distress.

The reasonableness of the explanation or excuse shall be determined from the viewpoint of a reasonable person in the accused's situation under the circumstances as he believed them to be."

2. Under the Maine Statute, a person accused of murder could rebut the statutory presumption that he committed the offense with malice aforethought by proving that he acted in the heat of passion on sudden provocation. In *Mullaney*, the Court held that this scheme improperly shifted the burden of persuasion from the prosecution to the defendant in violation of due process.

"§ 125.20 Manslaughter in the first degree

"A person is guilty of manslaughter in the first degree when:

\* \* \* \* \* \*

"2. With intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as defined in paragraph (a) of subdivision one of section 125.25. The fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subdivision."

The close similarity of the Delaware statutory scheme governing the subject matter is clear:

11 *Del.C.* § 636 provides in pertinent part:

"§ 636. *Murder in the first degree; class A felony.*

"A person is guilty of murder in the first degree when:

"(1) He intentionally causes the death of another person; \* \* \* "

\* \* \* \* \* \*

11 *Del.C.* § 632 provides in pertinent part:

"§ 632. *Manslaughter; class B felony.*

"A person is guilty of manslaughter when:

\* \* \* \* \* \*

"(3) He intentionally causes the death of another person under circumstances which do not constitute murder because he acts under the influence of extreme emotional distress; \* \* \*."

11 *Del.C.* § 641 provides:

"§ 641. Extreme emotional distress.

"The fact that the accused intentionally caused the death of another person under the influence of extreme emotional distress is a mitigating circumstance, reducing the crime of murder in the first degree as defined by § 636 of this Criminal Code to the crime manslaughter as defined by § 632 of this Criminal Code. The fact that the accused acted under the influence of extreme emotional distress must be proved by him by a preponderance of the evidence. The accused must further prove by a preponderance of the evidence that there is a reasonable explanation or excuse for the existence of the extreme emotional distress. The reasonableness of the explanation or excuse shall be determined from the viewpoint of a reasonable person in the accused's situation under the circumstances as he believed them to be."

For present purposes, we consider the terms "extreme emotional disturbance" in the New York Statute and "extreme emotional distress" in the Delaware Statute to be synonymous. See American Law Institute Model Penal Code, § 210.3 of the 1962 Proposed Official Draft. With that understanding, the analogy between the two Statutes makes *Patterson* undeniably controlling: In both, malice aforethought is omitted as an expressed element of murder;[3] in both, extreme emotional disturbance, or distress as the case may be, is made a mitigating circumstance which reduces murder to manslaughter; and in both, the defendant has the burden of proving the mitigating circumstance.

For these reasons, we consider *Patterson* and not *Mullaney* controlling upon the validity of § 641. The features[4] of the New

---

**3.** "Although 'express malice' at one point may have had its own significant independent meaning, see Perkins, A Re-Examination of Malice Aforethought, 43 Yale L.J. 537, 546–552 (1934), in practice a finding that the killing was committed with malice aforethought had come to mean simply that heat of passion was absent." *Patterson v. New York*, 97 S.Ct. at 2330–1.

**4.** In his dissent in *Patterson*, Mr. Justice Powell stated:

"The Court today, without disavowing the unanimous holding of *Mullaney*, approves New York's requirement that the defendant prove extreme emotional disturbance. The Court manages to run a constitutional boundary line through the barely visible space that separates

York Statute, which the Court found sufficient to make *Patterson* distinguishable from *Mullaney*, are present in our Statutes. Accordingly, we conclude that *Patterson* requires that *Fuentes* be overruled, and that § 641, which we declared unconstitutional solely on the basis of *Mullaney*, be revived.

Upon the basis of the foregoing, the questions certified are answered in the affirmative.

### III.

■ It is contended by the defendant that the retroactive application of a resurrected § 641 in the trial of his case would constitute a denial of due process of law under the Ex Post Facto Clause, Art. 1, § 10 of the Federal Constitution. We agree.

The offense in this case occurred on May 12, 1977. *Patterson* was decided on June 17, 1977. It is unquestionable that the resurrection of § 641 by this decision will have the same force and effect as if legislatively enacted on the date hereof; and it is settled that the Ex Post Facto Clause applies to judicial action as well as legislative. *State v. Dickerson*, Del.Supr., 298 A.2d 761, 768 (1972).

In *Calder v. Bull*, 3 Dall. 386, 390, 1 L.Ed. 648 (1798), the U. S. Supreme Court stated that among the laws within the purpose and intent of the *ex post facto* prohibition is this: "Every law that alters the legal rules of evidence and requires less, or different, testimony than the law required at the time of the commission of the offense, in order to convict the offender."

In *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), the U. S. Supreme Court found that a procedural change, made between the date of the offense and the trial date, was not violative of the Ex Post Facto Clause, even though it had a detrimental impact upon the defendant, because:

"The crime for which the present defendant was indicted, the punishment

prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute." 110 U.S. at 589–590, 4 S.Ct. at 210.

The above guideline was endorsed verbatim and applied recently in *Dobbert v. Florida*, 432 U.S. 282, 294, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344, 357 (1977).

A slightly different approach appears in *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925) in which it is stated: " * * * it is now well settled that statutory changes in the mode of trial or the rules of evidence, which do not deprive the accused of a defense and which operate only in a limited and unsubstantial manner to his disadvantage, are not prohibited."

■ We cannot say that upon the trial of the defendant, a revival of § 641 will not alter "the legal rules of evidence" and require "less, or different testimony than the law required at the time of the commission of the offense, in order to convict the offender"; nor can we say that a revival will not affect the "quantity or the degree of proof necessary to establish his guilt" or "will operate only in a limited and unsubstantial manner to his disadvantage". Any substantial doubt as to a possible deprivation of due process of the law must be resolved in favor of the defendant.

For these reasons, we hold that the revived § 641 may not constitutionally be applied retroactively. Otherwise stated, we hold that the revived § 641 may be constitutionally applied prospectively only, and may not be constitutionally applied in the trial of any offense committed prior to the date of this decision. *State v. Dickerson*, Del. Supr., 298 A.2d 761, 768–9 (1972).

---

Maine's law from New York's. It does so on the basis of distinctions in language that are

formalistic rather than substantive." 97 S.Ct. at 2333.