Donald BATES, Defendant below, Appellant,

v.

STATE of Delaware, Plaintiff below, Appellee.

Supreme Court of Delaware.

Submitted Jan. 9, 1978.

Decided May 9, 1978.

**1140**

John A. Clark, III, and Eugene J. Maurer, Jr., Asst. Public Defenders, Wilmington, for defendant below, appellant.

George H. Seitz, III, and Robert B. Anderson, Deputy Attys. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

The defendant appeals his convictions of murder in the first degree, attempted murder in the first degree, and possession of a deadly weapon during the commission of a felony.

## I.

The basic facts are not in dispute: After the defendant received a telephone call from a girl friend, informing him that she would no longer see him, the defendant went to her home with a shotgun. They argued and, after the girl refused to enter his car, the defendant shot and killed her. The defendant then drove to a nearby pharmacy, the place of employment of a man whom the defendant believed to be the source of his problem with the girl. The defendant entered the pharmacy with the shotgun; upon seeing the defendant and the gun, the man fled into the back room. He was followed by the defendant and, while running, the defendant fell and the gun discharged; fortunately, no one was hit.

Pursuant to Superior Court Criminal Rule 14,[1] the defendant moved for separate trials (1) on the charge of first degree murder and the related weapon charge, and (2) on the charge of attempted first degree murder and the related weapon charge; the Superior Court denied the motion. At trial, the defendant's sole defenses were extreme emotional distress and lack of intent to kill;[2] he was convicted by the jury on all four charges. The defendant appeals; we affirm.

**1.** Super.Ct.Crim.Rule 14 provides:

"If it appears that a defendant or the State is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the Court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the Court may order the attorney for the State to deliver to the Court for inspection in camera any statements or confessions made by the defendants which the State intends to introduce in evidence at the trial."

## II.

In denying the motion to sever, the Trial Court found no prejudice to the defendant from a joint trial inasmuch as (1) the investigation of both offenses was so closely interrelated that the facts of both would necessarily be presented before the jury; and (2) the offenses, of similar nature, occurred within minutes of each other so that the State might present evidence of a common scheme. In addition, the Court noted that judicial economy would be served by a single trial.

The defendant contends that the Superior Court erred in denying the motion since the prejudice to the defendant from the joinder was apparent: (1) the jury could use evidence in one crime to infer criminal intent in the other; (2) the jury could confuse and cumulate the evidence; (3) the defendant would not be able to assert his Fifth Amendment privilege against self-incrimination as to one offense if he chose to testify as to the other; and (4) the jury would be more hostile to the defendant.

Whether to grant or deny severance is a matter within the sound discretion of the Trial Court. While abuse of discretion usually depends upon the facts and circumstances of each case, as a general rule it may be said that discretion has been abused by denial when there is a reasonable probability that substantial injustice may result from a joint trial. *Jenkins v. State*, Del.Supr., 230 A.2d 262 (1967). The defendant has the burden of demonstrating such prejudice. See, *U. S. v. Crockett*, 5th Cir., 514 F.2d 64 (1975).

**2.** 11 *Del.C.* § 636(1) defines murder in the first degree as follows:

"§ 636. Murder in the first degree; class A felony.

"A person is guilty of murder in the first degree when:

"(1) He intentionally causes the death of another person; or * * *."

For extreme emotional distress as a defense of mitigation reducing first degree murder to manslaughter, see *Fuentes v. State*, Del.Supr., 349 A.2d 1 (1975).

 While we are aware of the potential for prejudice inherent in a joint trial of separate offenses, we find no abuse of discretion in the Trial Court's failing to sever the trial in the instant case. The defendant has not shown that any prejudice resulted from the refusal to grant a severance; mere hypothetical prejudice is not sufficient. See *United States v. Weber*, 3rd Cir., 437 F.2d 327 (1970). In addition, where evidence concerning one crime would be admissible in the trial of another crime, as was the situation in the instant case, there is no prejudicial effect in having a joint trial. *Drew v. United States*, D.C.C.A., 118 U.S.App.D.C. 11, 331 F.2d 85 (1964). Finally, the assertion that the defendant would have conducted his defense differently, i. e., remained silent at one trial had there been two trials, does not *per se* demonstrate an abuse of discretion by the Trial Court in denying severance. *United States v. Weber*, supra.

### III.

Prior to the trial, it was agreed that the victim's parents and the defendant's parents would be excepted from the otherwise general sequestration order. Their presence in the courtroom was, nevertheless, conditioned upon there being no emotional outbursts. However, while the defendant was testifying the victim's mother began to wail and cry. The defendant promptly moved for a mistrial. The Trial Court denied the motion and instructed the jury to disregard the outburst in arriving at their decision.

**3.** The Court's instruction to the jury on this issue was:

"When some credible evidence supporting the presence of extreme emotional disturbance has been presented, the State must prove beyond a reasonable doubt that the defendant intentionally caused the death of the victim plus the absence of extreme emotional disturbance before there can be a verdict of guilty of Murder in the First Degree, or the State must prove beyond a reasonable doubt that the defendant recklessly caused the death of another person under circumstances manifesting a cruel, wicked and depraved indifference to human life plus the absence of extreme emotional disturbance before there can be a guilty verdict of Murder

The defendant contends that the outburst appealed to the passions of the jury and that it was error, therefore, for the Trial Court to deny the motion for mistrial without conducting a voir dire of the jurors to ascertain if prejudice resulted.

 Whether to poll the jurors in such situation is a matter of discretion for the Trial Court, cf. *Tobias v. State*, Md.App., 37 Md.App. 605, 378 A.2d 698 (1977). We find no abuse of discretion.

### IV.

 It is contended by the defendant that the Superior Court erred in its instructions to the jury on the issue of extreme emotional distress; it is argued that the instructions could have been misconstrued by the jury to place the burden on the defendant to prove beyond a reasonable doubt that his acts were the product of extreme emotional distress.[3] This argument is based upon *Fuentes v. State*, Del. Supr., 349 A.2d 1 (1975). We find no error in the instruction under *Fuentes*.[4]

### V.

The defendant unsuccessfully sought a jury instruction based upon the doctrine of "diminished responsibility". Reversible error is now asserted on the ground of refusal to give such instruction.

In *McCarthy v. State*, Del.Supr., 372 A.2d 180 (1977), we examined into the doctrine at

in the Second Degree. If, on the other hand, you are convinced beyond a reasonable doubt there was a killing that was intentional or there was a killing recklessly caused, with a cruel, wicked and depraved indifference to human life, and it was done under the influence of extreme emotional disturbance, then your verdict should be guilty of Manslaughter. Naturally, if the State has not proven any of the essential elements of either Murder in the First Degree or Murder in the Second Degree, or Manslaughter, as to Count I, your verdict should be not guilty."

**4.** *Fuentes* is controlling in this case although, prospectively, it has been recently overruled by *Moyer v. State*, Del.Supr., 387 A.2d 194 (1978).

some length,[5] but rejected it as inconsistent with the offenses of rape and kidnapping there involved. In this murder case, we are confronted with the ultimate decision of accepting or rejecting the doctrine. As indicated in *McCarthy*, there has been a broad spectrum of judicial opinion as to the acceptability of the doctrine, ranging from total inadmissibility, [*Commonwealth v. Fleming*, 360 Mass. 404, 274 N.E.2d 809 (1971)], to admissibility for the purpose of negating an element of the offense charged and allowing conviction upon some lesser-included offense only. [*United States v. Brawner*, 153 U.S.App.D.C. 1, 471 F.2d 969 (1972).]

After careful reconsideration of the subject, we have decided that Delaware should be aligned with those jurisdictions which have rejected the doctrine altogether as a judge-made rule of evidence. We approve and adopt the well-reasoned and well-expressed conclusion set forth in the recent case of *Bethea v. United States*, D.C.Ct. App., 365 A.2d 64, 92 (1976), as follows:

"We conclude that the potential impact of concepts such as diminished capacity or partial insanity—however labeled—is of a scope and magnitude which precludes their proper adoption by an expedient modification of the rules of evidence. If such principles are to be incorporated into our law of criminal responsibility, the change should lie within the province of the legislature."

This conclusion is supported by the affirmative defense of insanity established by Statute, 11 *Del.C.* § 401,[6] and the mitigating defense of extreme emotional distress created by Statute, 11 *Del.C.* § 641;[7] see *Moyer v. State,* Del.Supr., 387 A.2d 194 (1978). This conclusion is also supported by the fact that, by § 407 of our new Criminal Code, the doctrine of diminished responsibility was explicitly recognized by the General Assembly, but prior to the Code's effective date, the provision was repealed. See 59 *Del.L.* Ch. 203, § 36.[8]

 We hold, therefore, that until established by the General Assembly as a

5. In *McCarthy*, the basic theory underlying the doctrine was set forth as follows:

"'[S]ince certain crimes, by definition, require the existence of a specific intent, any evidence relevant to the existence of that intent, including evidence of an abnormal mental condition not constituting legal insanity, is competent for the purpose of negating that intent. . . . [Thus] the actual purpose of such evidence is to establish, by negating the requisite intent for a higher degree of the offense, that in fact a lesser degree of the offense was committed.'

"Annot., 22 A.L.R.3d 1228, 1238 (1968). It is fundamental that the doctrine of diminished responsibility is not intended to supplant the test of mental illness; it is only after a defendant has been determined to be 'criminally responsible' for his actions, i. e. legally sane, that the doctrine has been considered applicable to determine the degree of the offense for which he will be held responsible." 372 A.2d at 182.

6. 11 *Del.C.* § 401 provides in pertinent part:

"(a) In any prosecution for an offense, it is an affirmative defense that, at the time of the conduct charged, as a result of mental illness or mental defect, the accused lacked substantial capacity to appreciate the wrongfulness of his conduct or lacked sufficient willpower to choose whether he would do the act or refrain from doing it."

7. 11 *Del.C.* § 641 provides:

"§ 641. Extreme emotional distress.

"The fact that the accused intentionally caused the death of another person under the influence of extreme emotional distress is a mitigating circumstance, reducing the crime of murder in the first degree as defined by § 636 of this Criminal Code to the crime of manslaughter as defined by § 632 of this Criminal Code. The fact that the accused acted under the influence of extreme emotional distress must be proved by him by a preponderance of the evidence. The accused must further prove by a preponderance of the evidence that there is a reasonable explanation or excuse for the existence of the extreme emotional distress. The reasonableness of the explanation or excuse shall be determined from the viewpoint of a reasonable person in the accused's situation under the circumstances as he believed them to be."

8. The repealed 11 *Del.C.* § 407 provided:

"In any prosecution for an offense which has an element of intention or knowledge, the defendant may prove as an affirmative defense by the testimony of a psychiatrist or other expert his inability, as a result of a mental illness or mental defect, to have the required state of mind at the time of the offense. He may, nevertheless, be convicted of any offense which he has committed requiring a state of mind which he was able to form."

provision collateral to the Statutes governing insanity and extreme emotional distress, the doctrine of diminished responsibility may not be invoked in this State.

### VI.

In testifying as to his opinion of the mental state of the defendant at the time of the crime, the psychiatrist called by the State related that the defendant stated to him that if he were granted parole he would be 33 years old when released from incarceration, that he had committed burglaries, and that he had considered using explosives against certain people. Over objection, the Superior Court allowed the psychiatrist's testimony on the ground that such statements were used by the psychiatrist in reaching his conclusion as to the defendant's intent during the commission of the offense. The defendant contends, however, that to allow such testimony was irrelevant and prejudicial error in that, for example, the statement regarding parole would lead the jury to believe incorrectly that the defendant, if convicted, would be paroled at age 33, and in that the statement regarding explosives was solicited by the psychiatrist and would not otherwise have arisen.

 The law of evidence requires an expert to state the facts underlying his conclusion. McCormick on *Evidence* § 14; 32 C.J.S. *Evidence* § 640. On the other hand, trials should be free of matter which is unduly prejudicial and which has a tendency to create confusion in the minds of the jurors by introducing a collateral issue. *State v. Benson*, Del.Supr., 375 A.2d 461 (1977). To avoid the potential conflict of these two standards, psychiatric testimony should be closely scrutinized to ensure that any statement of the defendant related by the psychiatrist is essential to his diagnosis and that it is made in good faith.

 On the record before us, the Trial Court did not err in permitting the psychiatrist to testify concerning the defendant's statements in giving his opinion as to the defendant's intent, an issue raised by the defendant. We are satisfied that the state-

ments of the defendant were factors underlying the expert's opinion testimony and were not repeated before the jury in bad faith.

Affirmed.