**Roy Luther RICHARDSON, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted Nov. 20, 1978.

Decided March 26, 1979.

Richard E. Fairbanks, Jr., Asst. Public Defender, Wilmington, for defendant below, appellant.

Carolyn Berger, Asst. Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., DUFFY, McNEILLY and QUILLEN, JJ.

QUILLEN, Justice:

The defendant was convicted of five felonies and one misdemeanor including murder in the first degree. It has been determined that a life sentence without benefit of parole should be imposed on the murder conviction. See *State v. Spence*, Del.Supr., 367 A.2d 983 (1976). Two points are alleged on appeal.

■ First, it is urged that the Trial Court erred by not fully instructing the jury on the State's burden of disproving the existence of extreme emotional distress.* The instruction given in this case is identical for legal purposes with the charge given in *Bates v. State*, Del.Supr., 386 A.2d 1139, 1142 (1978). This Court found no error in the instruction in the *Bates* case and that determination controls here.

■ In order to understand the second point raised by this appeal, certain factual background is necessary. Several months before the trial, Dr. Mohammad Iqbal, a staff psychologist employed by the Delaware State Hospital, examined the defendant and conducted a series of psychological tests. Although the record does not disclose that a written request was ever served upon the Attorney General, it is conceded that, at a pre-trial conference held shortly prior to trial, and possibly at several times thereafter, the defense orally requested copies of the test results. It also seems clear that the State orally agreed to comply with the request. The State did provide Dr. Iqbal's report and no objection is raised as to it. But the underlying test results, referred to in the record as protocols, were not supplied until the very morning that Dr. Iqbal testified as a rebuttal witness at trial.

The defense objected to any testimony of Dr. Iqbal because it did not have adequate time to prepare. The record indicates the Attorney General did not receive a copy of the protocols, which are approximately ten pages, until the night before Dr. Iqbal's testimony. It is difficult to discern any reason why copies had not been made given the fact that the examination was conducted by the State several months before the trial and the request first made some weeks before the trial.

The Trial Judge allowed the witness to proceed, indicating to the defense:

"At the conclusion of his direct examination, if you need an opportunity to study those tests, I'll give you that opportunity."

Defense counsel then put on the record the "main reason" for the objection indicating the defense "would have liked to have submitted the test protocols by Dr. Iqbal to the psychological experts retained by the defendant, so that they would have had an opportunity to review same." At the conclusion of direct examination, the defense requested only a five minute recess and a brief recess was taken. There followed a considerable cross-examination.

Following the conviction, the defense moved twice for a new trial. The first motion came prior to sentencing. It noted the failure to supply the protocols and alleged that Dr. Iqbal "had adjusted psychological test results . . . contrary to competent procedure of interpretation." The motion was denied from the bench on the day of sentencing. Subsequent to sen-

---

* The case was tried in light of *Fuentes v. State*, Del.Supr., 349 A.2d 1 (1975). *Fuentes* was overruled by *State v. Moyer*, Del.Supr., 387 A.2d 194 (1978). But, for the purposes of this opinion, we can assume *Fuentes* is controlling.

tencing, the second motion for new trial was filed. It asserted that Dr. Iqbal's "method of interpreting" a standard psychological test "was not appropriate" and such "misinterpretation" went "to the heart of his testimony and . . . the validity of his analysis." In support of the second motion there was attached an affidavit of Dr. W. Grant Dahlstrom, a professor of psychology at the University of North Carolina and an expert on the precise test in question. The affidavit in some detail supports the contention that Dr. Iqbal has misinterpreted the test results. The day after the second motion, the Trial Judge responded by letter which said only that the motion of the defendant for a new trial was denied. No reasons were given.

It is with this background that the defense asserts it was error for the court to allow expert testimony on psychological test results after the State failed to comply with Superior Court Criminal Rule 16(a)(2), the rule governing discovery and inspection.

While we do not rest solely on the point, we note initially that it is somewhat ironic for the defendant to rely on appeal on the letter of the discovery rule since no formal motion was ever filed and no formal order was ever entered. As the prosecutor noted on the objection to the testimony at trial, if it was so "crucial" to have the test result, the defense "could have come to the Court sooner and gotten a Court order to get it."

But more importantly, one must examine precisely the decision faced by the Trial Judge. The defense "would have liked to have submitted the test protocols . . . to the experts retained by the defendant." This request suggests a rather common situation where the experts who had been retained by the defense would review the material to assist in cross-examination. While the Trial Judge did allow the testimony, he did not ignore that request. To the contrary, he specifically offered the defense the opportunity to study "those tests" at the conclusion of direct examination. The length of the recess taken was not dictated by the Trial Judge. It was precisely what the defense requested. In a case where the defense had already presented expert testimony and presumably had experts available, it is difficult to fault the Trial Judge. Certainly it was not an abuse of discretion to permit the testimony of Dr. Iqbal and thus there is no error in that regard.

But, in another context, the reliance by the defendant on the affidavit filed below in support of his second motion for a new trial is troublesome. While normally differing expert interpretations present no error on appeal, the affidavit is particularly strong and is given by an expert in the particular test. In light of the peculiar factual background noted above, the assertion in the motion that the evidence "could not have been presented at trial" is certainly not frivolous. Given the reliance on the affidavit here, we feel that it is fairly within the bounds of the appeal to question the summary denial of the second motion for new trial and to require its reconsideration, if application is made on remand, as a motion for a new trial based on newly discovered evidence. See *State v. Lynch,* Del. O. & T., 128 A. 565, 568 (1925).

The case is remanded to the Superior Court for resentencing on the charge of murder in the first degree and for reconsideration, if application is made therefor, of the second motion for a new trial insofar as it relies on the affidavit of Dr. W. Grant Dahlstrom.