**Mark L. MASSEY, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 284, 2007.**

Supreme Court of Delaware.

Submitted: Jan. 16, 2008.
Decided: Feb. 12, 2008.

---

Bernard J. O'Donnell, Esquire, Office of the Public Defender, Wilmington, Delaware; for Appellant.

John Williams, Esquire, Department of Justice, Dover, Delaware; for Appellee.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

JACOBS, Justice.

Mark L. Massey ("Massey"), the defendant-below, appeals from a final judgment of conviction entered by the Superior Court. Massey was indicted on charges of attempted murder, first and second degree assault, possession of a deadly weapon during the commission of a felony ("PDWDCF"), possession of a deadly weapon by a person prohibited ("PDWPP"), and carrying a concealed deadly weapon. A jury found Massey guilty of the lesser-included offenses of second and third degree assault, and the remaining offenses with which he was charged. On appeal, Massey claims that the trial court erred by: (1) refusing to sever the PDWPP charge for trial; (2) refusing to give limiting instructions relating to certain photographs admitted into evidence; (3) refusing to give a limiting instruction regarding Massey's prior convictions; and (4) denying his motion for a judgment of acquittal. Because the Superior Court committed no legal error and did not abuse its discretion, we affirm.

## FACTS

On May 21, 2006, Massey was involved in an altercation with three men outside a nightclub in Dover: Steven Cahall ("Cahall"), James Shahan ("Shahan") and David Peer ("Peer"). Massey attended the club with Bonnie Messick (his former girlfriend) and Danielle Trackey. Around 1:00 a.m., both groups left the club. There was conflicting testimony at trial about what happened next.

Cahall testified that he witnessed an argument between Massey, Peer, and Shahan, and that Massey threw the first punch—at Shahan. Cahall further testified that he attempted to intervene in the fight—which lasted 30 to 40 seconds—and that he was stabbed four times with a knife in the chin, left chest, shoulder and back.

Shahan similarly testified that he noticed Peer following Massey, who was accompanied by two females. Peer was saying something to Massey. Because it appeared to Shahan like words were going to be exchanged, he stepped in between Massey and Peer. Shahan and Massey exchanged words, and Massey "lunged at [Shahan], swung with the right hand [,] [Shahan] saw the right hand coming [and] swung back." Shahan explained that he "saw the hand which looked like a punch [and] was expecting to feel some kind of impact." Although Shahan felt no

impact, when the altercation was over, Shahan realized that he had sustained multiple slice wounds—to his forehead, eye, temple, and back.

Peer's account of these events conflicted with Cahall's and Shahan's. Peer denied that he or anyone else was involved in an argument with Massey before the altercation. Peer testified that while standing outside in the club parking lot, he saw Massey with Cahall and Shahan and that Massey was the one who started the fight, by swinging at Cahall. According to Peer, Shahan then hit Massey. Peer intervened in the altercation and "smacked" Massey's hand and Massey swung at him. After the fight was over, Peer realized that he had sustained multiple injuries to his hands.

Photographs of the wounds sustained by Shahan, Cahall, and Peer were shown to the jury. Massey twice requested limiting instructions regarding the use of those photographs, but those requests were denied. After an unrecorded sidebar conference, the trial judge stated "I don't see any need for that. We've had far worse pictures before, without that kind of instruction."

Massey testified that his fight with Cahall, Peer, and Shahan began after a minor confrontation with other bar patrons. According to Massey, because one of his friends had punched someone, three men surrounded Massey and one of them punched him. Thereafter, Massey took out a knife that was in his pocket, and from a crouched position started swinging

the knife to defend himself. Massey's account of events was supported by Bonnie Messick (who was cut on the arm during the fight), Danielle Trackey, and two third-party witnesses.

At the time of these events, Massey was on probation. He was also a "person prohibited" from carrying a deadly weapon as a result of having pled guilty in 2003 to possession of a firearm by a person prohibited, and in 2005 to possession of ammunition by a person previously adjudicated delinquent. Massey also had a 2003 prior conviction for criminal impersonation, which is a crime of dishonesty. Before trial, Massey moved to sever the PDWPP charge from the other six charges in the indictment. Massey contended that the joinder would be prejudicial because it would enable the State to introduce evidence of Massey's prior crimes to show that Massey was a "person prohibited"—an element of the pending PDWPP charge. The prejudice, Massey argued, was that the jury could use the evidence of his prior crimes to infer a general criminal disposition and, thus, find him guilty of the remaining charges in the indictment.

At a pretrial hearing, the Superior Court judge denied Massey's motion to sever, stating that "I can't grasp what prejudice there will be." The trial judge noted that although evidence of a defendant's prior crimes is not admissible to prove criminal propensity,[1] it is admissible to impeach a witness' credibility.[2] The

---

1. D.R.E. 404(b) (Character Evidence Not Admissible To Prove Conduct; Exceptions; Other Crimes) states, relevantly: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

2. D.R.E. 609 (Impeachment by Evidence of Conviction of Crime) provides, pertinently: "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted but only if the crime (1) constituted a felony under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect or (2) involved

trial judge added that defense counsel's stated intention to tell the jury that Massey was on probation at the time of the events—and that as a result Massey was prohibited from carrying a weapon—eliminated any potential prejudice.

As agreed at the pretrial hearing, the trial judge gave the jury the following curative instruction before counsels' opening remarks:

> Ladies and gentleman, you may hear testimony regarding the fact that the defendant was on probation for unrelated offenses at the time of the events described before you. First, you must not speculate as to the nature of the offense for which he received probation since it is irrelevant to the matters before you. Second, you must not assume that because the defendant was on probation he was a person of bad character who is more likely to have committed any of the crimes charged, or who is less believable than any other witness.

In his opening statement, Massey's counsel informed the jury about Massey's probation, without mentioning the crimes that Massey had previously committed:

> You will then hear from [Massey who] will tell you that he was on probation at this time. [ ... ] He will tell you at some point in time that, by being on probation, there is a lot of no-nos. It is a no-no to consume alcohol; it is a no-no to have a weapon; it is a no-no to go to a bar; and, for him, it was a no-no to be out after ten o'clock. So he was engaged in no-nos in violation of his probation.

As the trial continued, the parties reached an agreement: Massey's counsel agreed to stipulate to Massey being a "person prohibited," by informing the jury of Massey's 2003 and 2005 similar felony convictions.[3] Later, during his cross-examination, Massey was questioned about his prior convictions by the prosecution, for impeachment purposes. There were no further references to Massey's prior convictions during the trial. The jury instruction on PDWPP contained no specific reference to the prior crimes, but only to the parties' stipulation that Massey was a "person prohibited." The jury was also instructed that:

> There has been evidence in this case during the examination of the defendant that he has previously been convicted of certain offenses. You are instructed that you may consider this evidence only in deliberating upon the credibility of the defendant's testimony, that is, in deciding whether or not you believe the defendant's testimony. You may not consider this evidence of prior convictions for any other purpose. You may not consider this evidence to infer a predisposition on the part of the defendant to commit crimes.

The jury found Massey guilty of four lesser included assault charges (second and third degree assault), PDWDCF, PDWPP, and carrying a concealed deadly weapon. Massey filed a post-conviction motion for judgment of acquittal, arguing that the jury instruction for PDWDCF was defective. The grounds for that motion were that the jury had been instructed that an element of the PDWDCF charge is that Massey be found guilty of a

---

dishonesty or false statement, regardless of the punishment."

**3.** The stipulation read to the jury stated: "The parties hereby stipulate that defendant, Mark Massey, on April 7th, 2003, was convicted of

felony possession of a firearm by a person prohibited [and][o]n April 14, 2005 ... was convicted of felony possession of ammunition by a previously adjudicated delinquent."

felony—specifically, first degree assault—whereas Massey was only found guilty of the felony of second degree assault. Therefore (Massey argued), an acquittal was required as a matter of law. Massey's motion was denied.[4] This appeal followed.

### ANALYSIS

#### I. Limiting Instruction Regarding the Photographs

■ The first issue is whether the Superior Court erred in denying Massey's requests for limiting jury instructions with respect to the photographs depicting the wounds sustained by the victims. A trial judge has "broad discretion to admit or reject photographs depicting a victim's injuries"[5] and "absent abuse of discretion, the ruling will be sustained on appeal."[6] The standard for reviewing a denial of a requested jury instruction, however, is de novo.[7]

■ Massey does not contend that the photographs were improperly admitted into evidence. His sole claim is that the trial court should have given a "limiting instruction to the jury concerning the evidentiary purpose of the photographs because several ... depicted gruesome laceration injuries." Massey's counsel proffered a cautionary instruction but the trial court rejected it, noting that the proffered instruction would be unnecessary because the court had seen "far worse pictures before."

Because the sidebar conference was not recorded, the content of the proffered instruction cannot be determined. Moreover, Massey has not articulated any reason to support his claim that the admission of the photographs without a limiting instruction was "unfairly prejudicial." Massey's sole argument is that the pictures were "gruesome" and "potentially inflammatory."

■ Under D.R.E. 403, the trial judge must determine if the evidentiary value of the disputed evidence is outweighed by potentially unfair prejudice to the defendant. "Simply because photographs of a victim ... are gruesome or unpleasant, does not render them prejudicial."[8] Our review of the photographs reveals no unfair prejudice to Massey, who was charged with inflicting serious physical injury (i.e., knife wounds) upon three of the victims and attempting to kill a fourth. The only purpose for which the photographs were admitted, and the only purpose for which they could be considered by the jury, was to show the nature and extent of the victim's injuries. Therefore, the trial court did not abuse its discretion by refusing to give the requested instruction.

#### II. Jury Instruction on PDWDCF

■ We next consider whether the trial court erred in denying Massey's motion for judgment of acquittal where there was an error in the jury instructions relating to the PDWDCF charge. We review de novo the Superior Court's denial of a motion for judgment of acquittal,[9] which should be

---

4. *State v. Massey,* 2007 WL 1653503 (Del.Super.).

5. *Casalvera v. State,* 410 A.2d 1369, 1372 (Del. 1980).

6. *Conyers v. State,* 396 A.2d 157, 160 (Del. 1978) (citing *Shantz v. State,* 344 A.2d 245, 246 (Del.1975)). *Accord Young v. State,* 407 A.2d 517, 522 (Del.1979).

7. *See, e.g., Lunnon v. State,* 710 A.2d 197 (Del.1998).

8. *Bridges v. State,* 706 A.2d 489, 492 (Del. 1998).

9. *Neal v. State,* 2005 WL 1074397, at *1 (Del. Supr.) (citing *Hardin v. State,* 844 A.2d 982, 989 (Del.2004) and *Seward v. State,* 723 A.2d 365, 369 (Del.1999)).

granted only if there is "insufficient evidence" to sustain a guilty verdict.[10] Here, Massey does not contest the sufficiency of the evidence but, rather, the "sufficiency of the law" contained in the jury instruction on PDWDCF.[11] Because the proper vehicle for complaining of such an error would have been a motion for a new trial,[12] as a purely procedural matter the Superior Court did not err in denying the motion for acquittal.

■ Massey's claim also lacks merit, as a substantive matter. We have held that "[e]ven where there are some inaccuracies in an instruction, this Court will reverse only if the deficiency undermined the jury's ability 'to intelligently perform its duty in returning a verdict.'"[13] Here, the "deficiency" in the jury instruction was harmless error, because it did not undermine the jury's ability to perform its duty intelligently.

■ In assessing the adequacy of an instruction, "we must examine the entire instruction and not merely one statement taken out of context."[14] The entire jury instruction relating to the PDWDCF charge was:

Under Delaware law, a person is guilty of Possession of a Deadly Weapon During Commission of a Felony when he is in possession of a deadly weapon during the commission of a felony.

In other words, in order to find the defendant guilty of Possession of a Deadly weapon During Commission of a

Felony, you must find that each of the following three elements has been established beyond a reasonable doubt:

First, the defendant committed a felony, Assault in the First Degree; and Second, during the commission of the Assault in the First Degree, the defendant possessed a deadly weapon, a cutting instrument; and Third, the defendant acted knowingly.

The first paragraph of the instruction is a correct statement of the law. It informs the jury that, to convict Massey of PDWDCF, it must find that Massey was in possession of a deadly weapon during the commission of "a felony." The third paragraph—which references not only the commission of "a" felony but also, the specific felony of "assault in the first degree"—is also a correct statement of the law. The problem is that Massey was not convicted of assault in the first degree, but of the lesser included offense of assault in the second degree. However, the jury knew from the jury instructions[15] that assault in the second degree is also a felony, and would, therefore, provide a sufficient basis for finding Massey guilty of PDWDCF. Had the third paragraph of the PDWDCF been drafted to make reference to "assault in the first degree *or assault in the second degree*," the verdict would have been the same. We find the error in the wording of the instruction to be harmless because, when considered "in its entirety," the jury instruction at issue was "reasonably infor-

10. See Super. Ct.Crim. R. 29. See also Vouras v. State, 452 A.2d 1165, 1169 (Del.1982).

11. See State v. Massey, 2007 WL 1653503, at *1 (Del.Super.).

12. See United States v. Cohen, 301 F.3d 152, 159 (3d Cir.2002) (holding that "[t]he usual remedy for an error in a jury instruction is retrial").

13. Cabrera v. State, 747 A.2d 543, 544 (Del. 2000) (citing Storey v. Castner, 314 A.2d 187, 194 (Del.1973)).

14. Deputy v. State, 500 A.2d 581, 596 (Del. 1985) (citing Haas v. United Technologies, 450 A.2d 1173, 1179 (Del.1982)).

15. See State v. Massey, 2007 WL 1653503, at *2–3 (Del.Super.).

mative"[16] and the deficiency complained of did not prevent the jury from "intelligently perform[ing] its duty." Accordingly, Massey's claim lacks merit even if he had moved for a new trial rather than moving, as he incorrectly did, for a judgment of acquittal.

### III. Severance of the PDWPP Charge

 The third issue is whether the Superior Court erred in denying Massey's motion for relief from the allegedly prejudicial joinder of the PDWPP charge. This Court reviews a decision on severance for abuse of discretion.[17] The denial of a motion to sever will not be disturbed unless the defendant demonstrates a "reasonable probability" that the joint trial caused "substantial prejudice."[18]

To promote judicial economy and efficiency, Superior Court Criminal Rule 8(a) permits the joinder of two or more offenses in the same indictment where the offenses are based upon the same act or transaction.[19] Here, the joinder of the seven pending charges against Massey, including the charge of PDWPP, related to the same act or transaction—the May 21, 2006 incident outside the Dover nightclub. But, because any joinder must be consistent with the rights of the accused, Superior Court Criminal Rule 14 also permits the court to sever offenses and hold separate trials if it appears that a defendant will be prejudiced by the joinder.[20]

Massey argues that the joinder was prejudicial because "the jury [might] use the evidence of one of the crimes to infer a general criminal disposition of the defendant in order to find guilt of the other ... crimes."[21] More specifically, Massey contends that the joinder of the PDWPP charge with the remaining six charges was prejudicial because, to establish an element of the PDWPP charge (that Massey was a "person prohibited"), the State would be entitled to introduce evidence of Massey's prior crimes, that included two very similar, and recent, convictions of possession of a firearm and of ammunition. We disagree.

First, had the jury believed that Massey had a general criminal disposition, it likely would have found him guilty as charged on all counts. Instead, the jury convicted Massey of four lesser-included offenses (second and third degree assault), and of only three of the original charges.

Second, the State was entitled to introduce evidence of Massey's prior convictions not only as an element of the pending PDWPP offense, but also, once Massey elected to take the stand, to impeach his

---

**16.** *Cabrera*, 747 A.2d at 544 (citing *Baker v. Reid*, 57 A.2d 103, 109 (Del.1947)).

**17.** *See Lampkins v. State*, 465 A.2d 785, 794 (Del.1983).

**18.** *See Bates v. State*, 386 A.2d 1139, 1141 (Del.1978).

**19.** Super. Ct.Crim. R. 8(a) pertinently provides: "Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connect-ed together or constituting parts of a common scheme or plan."

**20.** Super. Ct.Crim. R. 14 relevantly provides: "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

**21.** *Wiest v. State*, 542 A.2d 1193, 1195 (Del. 1988) (citing *State v. McKay*, 382 A.2d 260, 262 (Del.Super.1978)).

credibility as a witness under D.R.E. 609.[22] Massey correctly argues that, where the witness is the defendant who testifies about his prior convictions, D.R.E. 609, read together with D.R.E. 105, requires a cautionary jury instruction.[23] Here, as later discussed, sufficient limiting instructions were given.

Third, Massey argues that the Superior Court has specifically and repeatedly held in other cases that PDWPP charges should be severed, because the jury "may be unable to compartmentalize their judgment of guilt or innocence with regard to each of the separate counts of the indictment, and may infer a general criminal disposition."[24] Although this argument is not without force, the cases cited by Massey are distinguishable. This case involves an atypical situation—the fact that the defense was going to, and did, voluntarily disclose to the jury in the opening statement that Massey was on probation, thus enabling the jury to infer that Massey had a criminal record of some kind.[25] Massey claims that the potential for prejudice is greater when the jury knows specifically the nature of the prior crimes than when it only knows generally that the defendant is on probation because of a prior criminal record. Although we agree with this contention, nevertheless, the choice made by the defense to disclose Massey's status as a probationer reduced any potential prejudice below the required level ("substantial prejudice"), especially given that (by stipulation) the jury was informed about the specific nature of Massey's two prior similar convictions.[26] Because of that stipulation, the only other reference to Massey's

22. See Getz v. State, 538 A.2d 726, 730–31 (Del.1988).

23. According to our holding in Weber v. State, 547 A.2d 948, 955–56 (Del.1988), where evidence of a defendant's prior bad acts is supplied by the defendant himself—and is admitted under D.R.E. 404(b) because it serves to prove an element of a presently charged offense—"it must be accompanied by a cautionary instruction which fully and carefully explains to the jury the limited purpose for which that evidence had been admitted." The same precautions are required where the evidence of prior criminal misconduct is admitted to impeach the defendant's credibility. See Weber, 547 A.2d at 957 n. 6 (citing D.R.E. 105 and the Delaware Criminal Code Pattern Jury Instructions 24W (1974)) ("When evidence of a prior felony conviction is admitted to impeach a defendant's credibility, it must be accompanied by a limiting instruction").

24. See State v. Williams, 2007 WL 2473428, at *1 (Del.Super.) (citing State v. Loper, 1990 WL 91087, at *1 (Del.Super.)). See also State v. Wilson, 1978 WL 185316, at *2–3 (Del.Super.) and State v. Morrow, 1994 WL 636994, at *1 (Del.Super.).

25. The reason for voluntarily putting Massey's probationary status before the jury was tactical. The defense argued that Massey's post-stabbing conduct (not calling the police, washing his clothes, cleaning the blood from his trailer, placing his bloody sneakers in his mother's car trunk, and throwing away the knife) was not indicative of a consciousness of guilt—incompatible with the self-defense theory presented by Massey—and did not constitute an attempt to destroy incriminating evidence. Instead, Massey argued that his post-fight actions were motivated by his fear that the events would negatively impact his violation of probation hearing.

26. After denying Massey's motion to sever, the trial judge suggested that any potential prejudice deriving from the joinder would be eliminated by the parties stipulating that Massey was a "person prohibited," and not disclosing to the jury the underlying convictions. Massey's counsel initially declined that invitation. Later, counsel reconsidered his position and agreed "to stipulate to whatever the crimes are that make [Massey] a person prohibited." Counsel did not agree to plainly stipulate that Massey was a person prohibited (without reference to any specific crimes) because he did not want "to give up [his initial] position" and, on appeal, "lose the force of [the] argument ... that [the prior crimes] shouldn't be before the jury in any event."

prior crimes was during the following brief exchange on cross-examination, for purposes of impeachment:

Q: Mr. Massey, you've been convicted of felonies on two occasions, haven't you?

A: Yes.

Q: In fact, those are the ones we read in into the record, 2003 and 2005?

A: Correct.

Q: And you've been convicted of a crime of dishonesty. Isn't that correct?

A: Yes.

Q: And what was that?

A: Criminal impersonation.

Q: And when was that?

A: I think 2003.

[Prosecutor]: Nothing further of this witness, Your Honor.

These atypical circumstances significantly reduced, if not eliminated, any potential prejudice deriving from the trial judge's refusal to sever the PDWPP charge from the other charges. We therefore uphold the Superior Court's ruling.

### IV. Limiting Instruction Addressing the Defendant's Prior Crimes

Massey's final claim of error is that the trial court erred in failing to give a limiting instruction regarding his prior convictions (two weapon offense convictions and a conviction for criminal impersonation). It is undisputed that Massey's trial counsel requested and proffered such a limiting instruction to the trial judge, who refused to give it. The record discloses, however, that the trial judge did give: (i) during the opening remarks to the jury, a curative instruction regarding Massey's probation status, and (ii) after all the evidence was presented, a limiting instruction regarding the use by the jury of the evidence concerning his prior convictions. Neither party makes any reference

to those instructions. The record further indicates that Massey's trial counsel proposed an instruction "for the credibility of the defendant, that [was] marked as a Court Exhibit." Thus, it appears that the claim is not that the trial court failed to give a limiting instruction regarding Massey's prior crimes (as Massey argues in his briefs), but rather that the limiting instruction was not given in the particular form Massey requested. Unfortunately, because Massey does not disclose what the content of the proffered instruction was, or why the instructions actually given were defective, there is nothing before us to review. Therefore, Massey's last claim must be rejected.

### CONCLUSION

The judgments of the Superior Court are affirmed.