Bruce WOOD, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 535, 2007.

Supreme Court of Delaware.

Submitted: Aug. 20, 2008.
Decided: Sept. 10, 2008.

Edmund M. Hillis, Office of the Public Defender, Wilmington, DE, for appellant.

Elizabeth R. McFarlan, Department of Justice, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

STEELE, Chief Justice:

Appellant-defendant Bruce Wood appeals his Superior Court convictions on Rape First Degree and Continuous Sexual Abuse of a Child.[1] A grand jury indicted Wood on eighteen counts of Rape First Degree and two counts of Continuous Sexual Abuse of a Child for incidents involving two different children in the same indictment. Wood argues on appeal that the motion judge abused his discretion when he denied Wood's motion to sever the two separate series of incidents. He contends that trying the incidents together in one trial prejudiced him. The State responds that the alleged offenses were similar in nature and that Woods cannot demonstrate any resulting prejudice. After offenses are properly joined in the same indictment for judicial economy and efficiency, a defendant bears the burden of demonstrating a reasonable probability of prejudice for the charges to be severed and tried separately. Wood does not meet that burden and, accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

The State charges Wood with multiple crimes arising from two series of sexual abuse incidents involving two different children. The first child, CG, lived with her family on the third floor of the Linden Green apartments in Pike Creek, Delaware, from January 1994 until July 2001. Wood lived in the same apartment building on the second floor with his girlfriend and child. In 1996, when CG was about six years old, Wood began sexually abusing her. CG and her siblings would spend time at Wood's apartment and play games with his son. The children would also play hide and seek with Wood. Wood would have the children hide and then he would take CG into his bedroom and lock the door. On one occasion, Wood blindfolded CG and fed her ice cream until he put something other than ice cream in her mouth. CG testified that she could see Wood's genitals through the bottom of the blindfold, but did not understand until later that his penis was in her mouth. CG also testified that Wood showed her pornographic materials, but would not always blindfold her when she performed oral sex on him. She testified that the abuse continued over a course of three years when she was between the ages of six and nine and that it occurred more than fifty times.

After Wood's girlfriend moved out in 1997, CG's stepfather discovered Wood and CG in Wood's bedroom with the door locked, but both Wood and CG denied that anything had happened. CG's parents never allowed the children to be alone with Wood after that. Later Wood also moved out of that apartment complex. It was not until fall 2005, however, that CG told her mother that Wood had "messed with [her]" sexually and they contacted the police.

The second complaining witness, SP, was the defendant's stepdaughter. In 1997, Wood met SP's mother and moved in with them four months later. SP testified that in 2000, when she was ten years old, Wood began to sexually abuse her on a daily basis. While wrestling, SP slipped and accidentally kicked Wood in the groin. Wood complained of pain for several days and then came home with an envelope that he said was from a doctor. SP testified that Wood told her that because she hurt him, she was going to have to fix him. Inside the envelope was a piece of paper that described a sexual "procedure," including oral, vaginal, and eventually, anal

---

1. 11 *Del. C.* § 773 (2007) (rape in the first degree); 11 *Del. C.* § 778 (2007) (continuous sexual abuse of a child).

sex, that she was to keep secret from her mother. SP testified that Wood sometimes videotaped and blindfolded her, and progressively integrated a crack smoking ritual into the abuse. He also showed her pornographic videos, including ones depicting her. SP testified that she and Wood engaged in sexual activities over a five-year period from 2000 to 2005, which occurred anywhere from 500 to over 2000 times.

In fall 2004, SP told a boyfriend that her stepfather was sexually abusing her. In October 2005, she told a counselor that Wood had been raping her for five years. When her mother found out and confronted Wood about the allegation, Wood said that SP was lying and that "if anybody raped anybody, she raped me." Wood, when contacted by police, denied the allegations and fled to Florida.

Wood was arrested and indicted on eighteen counts of Rape First Degree (eight counts with a victim under twelve years of age and ten counts by a person in a position of trust) and two counts of Continuous Sexual Abuse of a Child. The indictment charged alleged incidents with CG from September 1, 1996 to June 30, 1998 and with SP from March 26, 2000 and March 25, 2005.

Before trial, Wood filed a motion to sever the charges arising from the incidents related by the two complainants under Superior Court Criminal Rule 14.[2] He conceded to the motion judge that the offenses were similar in nature and charged under the same statutes, but argued that the time frames in which the alleged offenses occurred was well separated; the children had different relationships with

Wood (one was his stepdaughter and the other was the daughter of a neighbor); and that the defenses would be different and separate. After discussing the motion with counsel, the Superior Court judge denied the motion to sever from the bench, noting the strong similarity of the evidence for both sets of offenses. He did give Wood and the State leave to file supplemental briefing within five days, however. Neither party submitted anything additional to the court. Following an eight day jury trial, the jury found Wood guilty of all charges except two counts of Rape First Degree on which the jurors were hung.

### DISCUSSION

■ On appeal, Wood contends that years separated the alleged offenses involving different victims and that three categories of prejudice are present in this case because: (1) the quality, nature, and strength of the two cases were different such that the jury would be unable to judge the evidence separately; (2) by trying the two complaining witnesses together, "there is palpable invitation for the jury to infer" Wood has "criminal propensity for such acts;" and, (3) holding one trial did not allow him to conduct his defense fairly because a single trial format deprived Wood of the ability to testify regarding one of the sets of charges. The State responds that if the cases had been severed, they would have introduced the other crime evidence under D.R.E. 404(b) to demonstrate Wood's modus operandi in the separate trials; therefore, Wood cannot demonstrate prejudice.[3]

■ We review the Superior Court judge's denial of the motion to sever for an

---

**2.** Super. Ct.Crim. R. 14 (2008).

**3.** *See Brown v. State,* 310 A.2d 870 (Del.1973) (where the offenses charged are of the same general nature and give evidence of a modus

operandi, severance has been denied, even in the face of obvious prejudice to the defendant).

abuse of discretion.[4] To promote judicial economy and efficiency, Superior Court Criminal Rule 8(a) permits the joinder of two or more offenses in the same indictment.[5] However, even if offenses are properly joined under Rule 8(a), Rule 14 provides that they may nevertheless be severed if a defendant is prejudiced by the joinder.[6] Specifically, the Rule states: "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."[7]

Denying a motion to sever under Rule 14 "is discretionary and will not be disturbed unless [the] defendant demonstrates a 'reasonable probability' that the joint trial caused 'substantial injustice.' "[8]

■ Prejudice in this context arises and severance of offenses may be appropriate where: "(1) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find; (2) the jury may use the evidence of one of the crimes to infer a general criminal disposition of the defendant in order to find guilt of the other crime or crimes; and (3) the defendant may be subject to embarrassment or confusion in presenting different and separate defenses to different charges."[9] In addition to these three circumstances, "a crucial factor to be considered in making a final determination on the motion should be whether the evidence of one crime would be admissible in the trial of the other crime."[10] However, the fact that the crimes are separate and are committed against different individuals with a lapse of time between them does not necessitate severance.[11]

Although the State argues that the joinder was permissible because the evidence of each series of incidents would have been admissible if the charges had been tried

4. *Massey v. State*, 953 A.2d 210, 2008 WL 383192, at *5 (Del.2008); *Caldwell v. State*, 780 A.2d 1037, 1055 (Del.2001); *Wiest v. State*, 542 A.2d 1193, 1195 (Del.1988); *Younger v. State*, 496 A.2d 546, 549–50 (Del.1985); *Bates v. State*, 386 A.2d 1139, 1141 (Del. 1978).

5. Super. Ct.Crim. R. 8(a) (2008); *see Massey v. State*, 953 A.2d 210, 216, 2008 WL 383192 at *5; *Caldwell*, 780 A.2d at 1054–55 (Del. 2001); *Skinner v. State*, 575 A.2d 1108, 1117 (Del.1990). Specifically the rule provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charges, whether felonies or misdemeanors or both, are of the same or similar character or are the based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan.

6. *State v. Caulk*, 2006 WL 2194656, at *4 (Del.Super.2006); Super. Ct. Crim. R. 14 2008.

7. Super. Ct.Crim. R. 14 (2008).

8. *Walker v. State*, 2002 WL 122643, at *1 (Del.) (quoting *Bates v. State*, 386 A.2d 1139, 1141 (Del.1978)).

9. *Caldwell*, 780 A.2d at 1055 (quoting *Wiest v. State*, 542 A.2d 1193, 1195 (Del.1988)).

10. *Kemske v. State*, 918 A.2d 338, 2007 WL 3777, at *3 (quoting *Wiest*, 542 A.2d at 1195 n. 3).

11. *See Skinner*, 575 A.2d 1108, 1118 (*citing Brown v. State*, 310 A.2d 870, 871 (Del.1973) and *McDonald v. State*, 307 A.2d 796, 798 (Del.1973)); *see also Bartholomew v. State*, 2007 WL 1476456, at *3 (Del.) ("Simply because some of the alleged acts [with different complainants] did not occur contemporaneously does not necessarily lead to a conclusion that the counts are so wholly unrelated that a failure to sever them would substantially prejudice [the defendant] by confusing the jury about its role . . . .")

separately, our focus is not on a *Getz*[12] analysis of the admissibility of prior bad acts under D.R.E. 404(b) under a modus operandi theory. Admissibility in separate trials is not a requisite for joinder of charges in an indictment. If charges are properly joined, there is no longer concern about prior conduct that was never proven. Rather in one trial, the State must prove beyond a reasonable doubt that each set of conduct occurred for the defendant to be found guilty on all counts.

We find that the offenses were properly joined in the indictment, that the charges derived from sufficiently similar incidents, and therefore the burden shifted to Wood to show prejudice. The two separate series of offenses were similar and can suggest parts of a common scheme or plan.[13] The evidence indicated that both complainants were of similar ages at the time of the alleged abuse. They were both deceived into performing sexual acts, one by ice cream, and the other by a doctor's note. They were both blindfolded (with black blindfolds) on some occasions. Wood showed both girls pornography to teach them how to do the sexual acts he wanted them to do. Wood made various threats to each of the girls to ensure they would not tell anyone of the alleged abuse. These, now proven facts imply a common scheme or plan, or at the very least are sufficiently of a similar nature or character to permit joinder. Although admittedly a high burden, the defendant must show that there was a reasonable probability of prejudice to sever the charges and have them tried separately. "Mere hypothetical prejudice is not sufficient."[14]

Wood also contends that the nature of the incidents invites the jury to infer that an individual charged with two offenses involving two different children at two separate times had a criminal propensity for committing those acts. Similarly, the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. We are satisfied, however, that the jury correctly discharged its duty to find guilt beyond a reasonable doubt on each of the charges on which it convicted Wood. The trial judge properly instructed the jury on the State's burden of proof on each count of the indictment in order to find Wood guilty. They were instructed that they "must find separately for each of those 20 counts." As a general rule, we must presume that the jury followed the trial judge's instruction.[15]

Furthermore, the jury sent out five notes during deliberations and hung on two counts of Rape First, reflecting the careful consideration they gave the evidence presented. It is reasonable to conclude that the jury was able to differentiate the evidence of each offense and did not assume that Wood had a criminal propensity for committing those acts.[16] If the jury had believed he had a criminal propensity for the acts alleged, then they likely would have convicted him on all counts.[17]

12. *Getz v. State*, 538 A.2d 726, 730 (Del.1988).

13. *See* Super. Ct.Crim. R. 8(a) (2008). *See also State v. Hermes* 2002 WL 484647 (Del.Super.2002) (allowing joinder of rape and child pornography on the basis of a common scheme or plan).

14. *Skinner*, 575 A.2d at 1118 (citing *Bates*, 386 A.2d at 1142).

15. *Capano v. State*, 781 A.2d 556, 589 (Del. 2001).

16. *See Massey*, 953 A.2d 210, 217, 2008 WL 383192, at *6 (finding that had the jury believed the defendant to have a general criminal disposition, then they would have found him guilty on all charged counts).

Wood contends that there is a qualitative and quantitative difference in the two cases and this difference deprived him of his ability to testify to the facts in SP's case and he declined to testify in CG's case. If the two cases had been tried separately, Wood contends he might have testified at one trial and not at the other. We do not believe that the joinder prevented the defendant from testifying or confused the jury in any way. Wood used the evidence that the two girls knew each other and that they both reported late to allege a conspiracy and that the girls had coordinated their version of the events. His defense to the two series of incidents was the same—he simply denied having inappropriate contact with either complainant. The assertion that Wood would have conducted his defense differently does not support the abuse of discretion claim when weighed against the factors that support joinder.[18]

In Wood's case, there are several factors that support joinder: the evidence suggested a common scheme or plan, the evidence was essential to the State's case, and the two offenses were similar. We have no substantial doubt about the fairness of the outcome and therefore, do not find that the motion judge abused his discretion.

## CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is AFFIRMED.

17. *Id.*

18. *See Skinner,* 575 A.2d at 1118 (*citing Brown v. State,* 310 A.2d 870, 871 (Del.1973) (finding that a short period of time between the two crimes or a similar modus operandi supports joinder and outweighs supporting factors of severance)).