IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ARTHUR CARTER, | § | |
| | § | No. 58, 2017 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID. No. 1306020689 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: November 1, 2017
Decided: November 15, 2017

Before **STRINE**, Chief Justice; **VALIHURA**, and **SEITZ**, Justices.

## <u>ORDER</u>

This 15th day of November, 2017 having considered the briefs and the record below, it appears to the Court that:

(1)    Arthur Carter was arrested for firing a gun into the air outside the home of his pregnant girlfriend, Morlicea Capers, after an argument. Prior to trial, Ms. Capers wrote letters to the court stating Carter did not threaten her or point a gun at her, but Carter's counsel did not call her as a witness. At trial, Carter and the State stipulated that Carter was a person prohibited from possessing a firearm. The State introduced evidence of 911 calls, Carter's admission to the police, and testimony of the police officer who interviewed Ms. Capers. The jury found Carter guilty of

possession of a firearm by a person prohibited, aggravated menacing, and possession of a firearm during the commission of a felony. The court declared Carter an habitual offender and sentenced him to thirty years at Level V. Carter filed a motion for post-conviction relief arguing that his counsel was ineffective, but the Superior Court denied the motion because Carter could not establish prejudice.

(2)     Carter appeals three of the claims: his counsel's failure to (a) sever the person prohibited charge, (b) call Ms. Capers, and (c) object to the officer's testimony. We agree with the Superior Court that counsel's stipulation to Carter's status as a person prohibited did not prejudice Carter because the judge gave limiting instructions to the jury and the State did not unduly focus on the stipulation. Further, his counsel's choice not to call Ms. Capers was a reasonable tactical decision to avoid her cross-examination and impeachment. And, the officer's testimony did not prejudice Carter because it was duplicative of other evidence. We therefore affirm.

(3)     On June 22, 2013, Carter and Ms. Capers had an argument that resulted in Ms. Capers' uncle throwing Carter out of the house. Carter retrieved a gun from his car and fired it into the air before driving away. Ms. Capers called 911, stating Carter was outside with a gun. A young female in the house also called 911, identifying Carter as the shooter after speaking with someone in the background. Officer Tate was on the scene within minutes of the 911 calls and interviewed Ms.

2

Capers about the events. The police apprehended and questioned Carter on June 27, 2013, and he admitted that he fired a gun into the air before fleeing.

(4) Before trial, Ms. Capers wrote letters to two judges explaining that she asked repeatedly for the charges to be dropped, that Carter never pointed a gun at her, and that she never felt threatened by him.[1] Counsel was aware of the letters but declined to call her as a witness. At trial, Carter's counsel stipulated that he was a person prohibited from carrying a firearm. The stipulation was entered into evidence with limiting instructions to the jury that it was "irrelevant to [their] deliberations," and that they were not to "speculate as to the reason why he's prohibited, nor consider that fact as evidence of guilt."[2] Officer Tate testified about his interview with Ms. Capers, recounting her testimony in which she identified Carter, described their "physical altercation," and explained that Carter fled the residence, returned with a gun, and fired a shot into the air.[3] The officer also stated that "[s]he was very excited, very upset, agitated"[4] and "definitely wanted [Carter] arrested."[5]

(5) The jury found Carter guilty of aggravated menacing, possession of a firearm by a person prohibited, and possession of a firearm during the commission of a felony. The court declared him an habitual offender and sentenced him to thirty

---

[1] App. to Opening Br. at 52–57.
[2] *Id.* at 81–82.
[3] *Id.* at 69.
[4] *Id.* at 68.
[5] *Id.* at 69.

years at Level V with decreasing levels of supervision. Carter appealed and this Court affirmed on November 12, 2014.

(6) On June 28, 2016, Ms. Capers signed an affidavit that if Carter's counsel called her at trial, she would have testified that "Arthur never put [her] in fear and that a gun was never pointed at [her]."[6] On July 11, 2016, Carter filed a motion for post-conviction relief, arguing that his counsel was ineffective for failing to (a) sever the person prohibited charge, (b) file a motion in limine to exclude the 911 calls, (c) contact Ms. Capers as a defense witness, (d) object to the police officer's testimony as hearsay, and (e) at the appellate level, for failing to appeal the denial of Carter's motion for acquittal based on lack of evidence.

(7) First, the Superior Court found that stipulating to Carter's status as a person prohibited did not prejudice him because neither the indictment nor the stipulation stated why he was prohibited, the jury was given instructions not to consider the stipulation as evidence of guilt,[7] and the State never emphasized the prohibition or invited speculation as to why he was prohibited.[8] Second, the court found the girl's 911 call did not prejudice Carter because it corroborated key evidence and was highly probative due to the small number of witness statements.

[6] *Id.* at 205–06.
[7] *State v. Carter*, 2017 WL 237621, at *4 (Del. Super. Ct. Jan. 18, 2017).
[8] *Id.*

In addition, the child's emotions were not prejudicial because the call was brief and the State stressed only the facts presented and not her emotional state.[9] Third, the court found Carter's counsel was not ineffective for failing to call Ms. Capers because it was a strategic decision to avoid her impeachment through cross-examination concerning her relationship with Carter and the contradictions in her prior statements. Fourth, the court found Carter was not prejudiced by his counsel's failure to object to the officer's testimony recounting Ms. Capers' statements as hearsay because it was "duplicative of the non-testimonial, excited utterances made by Ms. Capers and the child in their 911 calls."[10] Lastly, the court found Carter's appellate counsel was not ineffective for failing to raise the denial of his motion for acquittal because the State presented circumstantial evidence sufficient for a rational trier of fact to find Carter guilty beyond a reasonable doubt. The Superior Court denied Carter's motion on January 18, 2017, and this appeal followed.

(8) Carter appeals the Superior Court's decision regarding three of his claims, arguing the court abused its discretion by not finding his counsel ineffective for failing to (a) sever the person prohibited charge, (b) contact Ms. Capers as a potential witness, and (c) object to the officer's testimony as inadmissible hearsay. This court reviews a motion for post-conviction relief for an abuse of discretion.[11]

---

[9] *Id.* at *5.
[10] *Id.* at *8 (explaining that the testimony was "insignificant in light of more prominent, and probative, evidence submitted in the case").
[11] *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).

To establish that his counsel was ineffective, the defendant must show that his performance was deficient, falling below a reasonable standard of care, and the defendant was prejudiced, demonstrating a reasonable probability that but for his counsel's errors, the result of the proceeding would have been different.[12]

(9) Carter argues his counsel should have severed the person prohibited charge to prevent the "jury's consideration of bad character evidence to infer a general disposition."[13] However, Carter cannot establish that the failure to sever the charge would have changed the outcome of the case. The jury was never told why Carter was a person prohibited and were given specific limiting instructions that the stipulation was "irrelevant to [their] deliberations in this case," and they were "not to speculate as to the reason why defendant is prohibited, nor consider that fact as evidence of guilt as to the other crimes alleged in the indictment."[14] In addition, the

---

[12] *Strickland v. Washington*, 466 U.S. 669, 687–88 (1984); *Redden v. State*, 150 A.3d 768, 773 (Del. 2016).

[13] Opening Br. at 13; *see Massey v. State*, 953 A.2d 210, 217 (Del. 2008).

[14] App. to Opening Br. at 81–82; *Brown v. State*, 782 A.2d 262, 2001 WL 898589, at *2 (Del. 2001) (TABLE) ("A jury is presumed to understand and follow the instructions given by the Superior Court.").

State never emphasized the stipulation nor encouraged speculation by the jury.[15] Therefore, Carter was not prejudiced by his counsel's failure to sever the charge.[16]

(10) Carter argues his counsel was ineffective for not calling Ms. Capers, because she would have testified that she never felt threatened. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[17] Carter never requested Ms. Capers' testimony, but rather "hope[d] and believe[d]" she wouldn't appear in court.[18] "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged

---

[15] *Id.*; *cf. Wheeler v. State*, 127 A.3d 1163, 2015 WL 6150936, at *3 (Del. 2015) (TABLE) (finding defendant was not prejudiced by stipulating to being a person prohibited when his counsel "prepared a redacted form of the indictment that eliminated references to [the defendant's] previous conviction"); *State v. Rose*, No. 1206001558, 2016 WL 354892, at *4 (Del. Super. Ct. Jan. 28, 2016) (finding "no reason to believe that the outcome would have been different if trial counsel had chosen some other tack" than stipulating to being a person prohibited when the jury was not aware of the reason).

[16] We cannot find any plausible tactical reason for stipulating before the jury to the fact that Carter was a person prohibited. A guilty plea to the person prohibited charge would have been preferable as Carter was not challenging his possession of the weapon. We agree, however, that this stipulation does not, on this record, constitute grounds for reversal. As to this point, Chief Justice Strine is not convinced that a jury instruction asking a jury not to consider why a person is legally prohibited from carrying a weapon can be meaningful, as he finds it unlikely that the jury would not reasonably infer that whatever the reason was, it was one that cut against the defendant. But, because the evidence against Carter was so formidable, the Chief Justice supports the conclusion that there is no reasonable probability that the outcome at trial would have differed if the stipulation had not occurred.

[17] *Redden*, 150 A.3d at 773 (quoting *Strickland*, 466 U.S. at 689).

[18] App. to Opening Br. at 254.

7

as unreasonable."[19]  In addition, the decision was reasonable to avoid the State's impeachment of Ms. Capers by cross-examining her about her relationship with Carter and her prior statements to the police that contradicted her affidavit.  Thus, Carter cannot overcome the presumption that his counsel's decision was sound trial strategy.

(11)  Lastly, Carter argues his counsel was ineffective for failing to object to the officer's testimony as inadmissible hearsay.  But the court properly concluded that regardless of whether the testimony regarding Ms. Capers' statements was admissible, Carter was not prejudiced.  In *Johnson v. State*, this Court found an inadmissible statement regarding identification of a defendant was not prejudicial because the information was "merely cumulative in the State's case against [the defendant], and it did not have important relevance as an explanation" of his conduct.[20]  Similarly, the officer's statements were merely cumulative of Ms. Capers' statements in the 911 call.  Therefore, Carter cannot establish a reasonable probability that the outcome would have been different had the testimony been excluded.

---

[19] *Strickland*, 466 U.S. at 691.
[20] *Johnson v. State*, 587 A.2d 444, 451 (Del. 1991).

NOW, THEREFORE, it is hereby ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice