IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KHALIF WATSON, | § | |
| | § | No. 418, 2022 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1703002846A/B |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: February 21, 2024
Decided: April 22, 2024

Before **SEITZ**, Chief Justice; **VALIHURA**, and **LEGROW**, Justices.

## **ORDER**

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) Khalif Watson appeals from a Superior Court decision resolving his motion for postconviction relief under Superior Court Criminal Rule 61. Watson asserts that his trial counsel was ineffective for failing to object to the admission of Watson's prior felony firearm conviction as impeachment evidence, and that the Superior Court erred by finding that Watson had not met his burden to prove

1

ineffective assistance of counsel under *Strickland v. Washington*.[1] We conclude that Watson did not satisfy *Strickland's* prejudice element, and we therefore affirm.

(2) The facts underlying Watson's conviction are relatively straightforward. On March 4, 2017, Officers Christopher White and Hector Cuadrado of the Wilmington Police Department were driving northbound on Washington Street in Wilmington when they saw Watson walking on the sidewalk.[2] Officer White knew that Watson was the subject of an active capias, and the officers—intending to conduct a pedestrian stop—pulled the police car into the lane of oncoming traffic.

(3) The officers, who were trained to identify armed gunmen, observed Watson as he stopped, took two steps backwards, and "bladed" his body away from them while touching his right side—a sign that Watson was armed. Officer White said, "Khalif, don't run." But Watson, who had two prior felony convictions, ran anyway, and Officer White chased him on foot. The officers noticed that as Watson ran, he held one arm close to his body while the other arm swung freely—another sign that he was carrying a firearm.

---

[1] 466 U.S. 688 (1984).

[2] These facts are adopted from this Court's decision affirming Watson's convictions on direct appeal. *Watson v. State*, 303 A.3d 37, 37–44 (Del. 2023) (footnotes and record citations omitted). That opinion contains a fuller recitation of the facts.

(4)     Watson ran to his sister Rasheda Hinson's house on Washington Street. Officer White, however, caught up with Watson before he could get inside, and the two men crashed through the front door and into the living room where they struggled on the floor. According to Officer White, Watson then slid a silver handgun across the floor and under the couch. Meanwhile, Officer Cuadrado entered the home and heard Officer White say, "he just threw it under the couch." During the struggle, Watson's sister, Omisha Watson ("Omisha"), came downstairs from the second floor, entered the living room, reached under the couch, retrieved the gun, and left the house with it. According to several defense witnesses, however, Omisha had the gun in her hand when she came down the stairs, "stepped over" Watson and the officers, and then ran out the door with the gun. Omisha claimed that she found the gun in a barbeque grill behind her house a year earlier and that she had maintained possession of it since that time.

(5)     Officer White, who saw Omisha pick up the gun, chased her outside, leaving Officer Cuadrado to handle Watson alone. Once outside, Officer White told Omisha to drop the gun. Omisha, however, attempted to throw the gun under a parked car, but it bounced off the car and landed in the street. Officer White recovered the gun, which was loaded, and detained Omisha. The officers also detained Watson after he attempted to flee again.

3

(6)     On April 3, 2017, a grand jury indicted Watson and Omisha, charging Watson with Resisting Arrest, Carrying a Concealed Deadly Weapon ("CCDW"), Possession of a Firearm by a Person Prohibited ("PFBPP"), and Possession of Ammunition by a Person Prohibited ("PABPP"), and charging Omisha with Resisting Arrest and Hindering Prosecution. Omisha pleaded guilty to Resisting Arrest and was sentenced. As part of her plea agreement, she signed a statement agreeing that she ran from police while holding a gun discarded by Watson.

(7)     At Watson's request, his charges were bifurcated for trial purposes, with the resisting arrest and CCDW charges assigned to an "A" case and the PFBPP and PABPP charges deferred to a "B" case. The "A" case was tried before a jury, after which Watson elected to have a bench trial in the "B" case.

(8)     The primary dispute at trial was whether Watson ever possessed the gun in question. There was no forensic evidence linking him to the gun, which Watson and his three sisters testified Omisha exclusively possessed. The defense's narrative was at odds with the State's account: that Watson possessed the gun and discarded it during the struggle with the police, after which Omisha attempted to abscond with it.

(9)     During trial, the parties and the court discussed whether Watson would testify and, if so, whether his prior felony convictions would be admissible under Delaware Rule of Evidence 609. Watson previously was convicted of two felonies:

4

Robbery Second Degree in 2010 and Possession of a Firearm in 2013. His 2013 conviction arose under federal law. Although Watson's 2013 firearm conviction was not a crime of dishonesty, trial counsel did not ask the court to balance that conviction's probative value against its prejudicial effect under Rule 609(a), and the trial court did not expressly engage in any such balancing. Instead, the parties and the court seemed to agree that both convictions would be admissible under Rule 609 if Watson elected to testify.

(10) After Watson decided to testify in his own defense, the State asked the court whether it could inquire into Watson's prior firearm conviction to challenge his testimony as to why he ran from the police. Conceding that the State usually is "limited to asking the defendant the date of the conviction and what it was for[,]" the State argued that the additional inquiries should be permitted because Watson "would have been aware that he faced serious consequences for possessing a firearm and that it would be an appropriate question which goes to the defendant's motives and actions as to why he ran from the police[.]" Defense counsel argued that such questioning would be inappropriate and irrelevant to the "A" trial. The court ruled that, "[a]t this point, I'm going to limit [the questioning] to the crime and the date."

(11) Defense counsel then informed the court, outside the jury's presence, that he intended "to ask [Watson] on direct about prior felony convictions []," and noted his expectation that the court would give "a limiting instruction to the jury

5

about what that means." The trial judge agreed. During direct examination, Watson testified that he ran from the police because, as a new parent, he felt a powerful desire to see his son and had an unresolved capias for unpaid fines. Asked why he resisted arrest, Watson stated that he "was not trying to go back behind walls."

(12) Defense counsel then asked Watson about his two prior felony convictions and whether he had a gun on the day in question. No contemporaneous limiting instruction was given by the court following this testimony. On cross-examination, the State re-examined Watson about his two prior convictions. Immediately after those questions, the State asked Watson whether he was in possession of a firearm on the day in question.

(13) Before closing arguments, the State renewed its application to argue in closing that Watson knew that he was "a person prohibited, prohibited from having a firearm" and that is why he fled—not because of the open capias and his desire to see his son. The inference, the State argued, "goes only to the credibility of the defendant's purported reason for having run [from the police]." Ultimately, the court ruled that the State could argue in its closing that "maybe he ran because he was a convicted felon," but the court denied the State's request to refer to Watson's

"person prohibited" status. After closing arguments, the court gave a jury instruction regarding the limited use of prior convictions as evidence.[3]

(14) The jury returned guilty verdicts in the "A" case on the resisting arrest and CCDW charges. After dismissing the jury, the parties proceeded to the "B" case, and the trial judge found Watson guilty of PFBPP and PABPP. The Superior Court sentenced Watson to ten years of unsuspended Level V time, followed by community supervision.

(15) Watson filed a direct appeal in which he contended that the prosecution's use of his prior felony convictions during cross-examination and in closing argument implicitly "inject[ed] propensity evidence" into the trial, which amounted to prosecutorial misconduct clearly prejudicial to his substantial rights. This Court reviewed the prosecutor's actions *de novo* and found that there was no prosecutorial misconduct because the State did not use "Watson's felony record in service of a propensity argument."[4] Further, we held that even if some prosecutorial

---

[3] The court gave the jury the following limiting instruction: "You may consider evidence that the defendant was previously convicted of a crime for the sole purpose of judging the defendant's credibility, or believability. Evidence of a prior conviction does not necessarily destroy or damage the defendant's credibility, and it does not mean that the defendant has testified falsely. It is simply one of those circumstances that you may consider in weighing the defendant's testimony. You may not consider evidence of the defendant's prior convictions in deciding guilt or innocence. You may only consider such evidence in judging the defendant's credibility."

[4] *Watson*, 303 A.3d at 46.

misconduct occurred, the factors in *Hughes v. State*[5] militated against a finding of plain error, and we therefore affirmed Watson's conviction.[6]

(16) In postconviction proceedings in the Superior Court, Watson argued that his trial counsel was ineffective in conceding the admissibility of the prior firearm conviction under Rule 609. The court disagreed, holding that Watson failed to establish that trial counsel was ineffective or that Watson suffered prejudice from the alleged ineffectiveness. Watson now appeals the Superior Court's decision. This Court reviews the Superior Court's denial of a motion for postconviction relief for abuse of discretion.[7] We review legal and constitutional questions, including ineffective assistance of counsel claims, *de novo*.[8]

(17) We begin by noting that Watson's argument at this postconviction stage is limited to an ineffective assistance of counsel claim. Watson's brief confusingly blends an argument about trial counsel's representation with an argument that the trial court committed plain error in failing to balance probative value and prejudicial

---

[5] 437 A.2d 559 (Del. 1981).

[6] *Watson*, 303 A.3d at 50.

[7] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013) (en banc).

[8] *Id.*

8

effect under Rule 609.[9]  But any argument regarding an error by the trial court is barred under Rule 61(i) because Watson failed to raise it in his direct appeal.[10]

(18)   To prevail on a claim of ineffective assistance of counsel, the defendant must satisfy *Strickland's* two-prong standard.[11]   Under *Strickland*, the defendant must prove that (1) his trial counsel's performance was objectively unreasonable; and (2) his defense was prejudiced as a result.[12]  *Strickland* does not require that we evaluate these prongs in any specific order.  As stated by the Court in *Strickland*, "[t]he object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."[13] Accordingly, *Strickland* allows this court to dispose of an ineffective assistance claim under either prong of that test. [14]

---

[9] Opening Br. at 23 (arguing that in *Gregory*, "the trial court [failed to] conduct[] a balancing test to weigh the probative and prejudicial effects[]" of the introduction of the defendant's prior drug convictions); *id.* at 27 ("*Gregory* dictates that the failure of *the Court* to conduct a balancing test prior to the admission of the gun charge pursuant to D.R.E. 609 was plain error." (emphasis added)); *Watson*, 303 A.3d at 45.

[10] Super. Ct. Crim. R. 61(i)(3); *Cochran v. State*, 931 A.2d 436, 2007 WL 1452725, at *1 (Del. May 17, 2007) (TABLE); *Brown v. State*, 840 A.2d 641, 2003 WL 22994216, at *1 (Del. Dec. 18, 2003) (TABLE).

[11] 466 U.S. 668, 687 (1984).

[12] *Strickland*, 466 U.S. at 687–88, 691–92.

[13] *Id.* at 697.

[14] *Green v. State*, 238 A.3d 160,174–75 (Del. 2020) ("We may dispose of an ineffective-assistance claim based on the absence of sufficient prejudice without addressing the performance prong if, in fact prejudice is lacking.") (citing *Strickland*, 466 U.S. at 697); *State v. Vasquez*, 2001 WL 209867, at *1 (Del. Super. Jan. 31, 2001) ("Since the Court has concluded that Defendant has failed to

(19) We conclude that this case is best resolved under *Strickland's* prejudice prong. On direct appeal, we held that the State did not explicitly or implicitly use Watson's prior convictions as propensity evidence.[15] Watson's postconviction motion effectively seeks to revisit that holding, but his motion falters as to prejudice because he has not shown that it is reasonably probable that (i) the trial court would have excluded the evidence if trial counsel challenged its admission, or (ii) exclusion of the evidence would have changed the proceeding's outcome.

(20) Under *Strickland's* second prong, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."[16] The movant "must make specific allegations of actual prejudice and substantiate them."[17] These allegations must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[18] "A reasonable probability is a probability sufficient

---

establish sufficient cause under Rule 61(i)(3)(A), it need not address the issue of prejudice under Subsection (i)(3)(B).") (citing *Flamer v. State*, 585 A.2d 736, 747–48 (Del. 1990)).

[15] *Watson*, 303 A.3d at 39.

[16] *Id.* at 693.

[17] *Outten v. State*, 720 A.2d 547, 552 (Del. 1998) (en banc) (quoting *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996) (en banc), *cert. denied*, 517 U.S. 1249 (1996)).

[18] *Albury v. State*, 551 A.2d 53, 58 (Del. 1988) (quoting *Strickland*, 466 U.S. at 694).

to undermine confidence in the outcome."[19]  In sum, the defendant must prove actual prejudice.[20]

(21)  Watson's motion does not show that he was prejudiced by trial counsel's failure to object to his prior firearm conviction's admissibility under Rule 609(a).  Even if trial counsel had objected and the trial court had conducted the requisite balancing test, the decision of whether to admit the past firearm conviction fell within the trial court's discretion.  This court has never ruled that prior convictions that are similar to a charged offense always must be excluded under Rule 609's balancing test, and, in fact, we have previously held that a trial court did not abuse its discretion in finding that the probative value of a similar prior conviction outweighs its prejudicial effect.[21]  The trial court therefore reasonably could have concluded that the 2013 conviction's probative value outweighed its prejudicial effect, and Watson has not shown there is more than a "theoretical possibility" that the trial court would have excluded the conviction.[22]

---

[19] *Strickland*, 466 U.S. at 694.

[20] *Id.* at 693 ("[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice.").

[21] In some instances, the court has found the admission of a prior conviction prejudicial when the prior conviction was similar to the current charges. *State v. Ashley*, 1999 WL 463708, at *4 (Del. Super. Mar. 19, 1999) *rev'd on other grounds*, 798 A.2d 1019 (Del. 2002).  In other instances, this Court has found that the similar conviction's probative value outweighs its prejudicial effect. *Hines v. State*, 248 A.3d 90, 103 (Del. 2021); *Baldwin v. State*, 129 A.3d 231, 2015 WL 7756857, at *3 (Del. 2015) (TABLE); *Massey v. State*, 953 A.2d 210, 217–18 (Del. 2008).

[22] *Frey v. Fulcomer*, 974 F.2d, 348, 358 (3d Cir. 1992).

11

(22) Moreover, even if the trial court had excluded the conviction, it is not reasonably probable that the result of the trial would have been different.[23] To the contrary, in resolving Watson's direct appeal, we held that this was not a close case. The defense's theory required the jury to make credibility determinations about several defense witnesses other than Watson, and the admission or exclusion of his prior firearm conviction had no bearing on the other witnesses' credibility. In affirming Watson's convictions on direct appeal, we reasoned that:

> We disagree with Watson's contention that, because the State and the defense offered "divergent testimony," leaving the jury "to decide which cohort of witnesses was more credible," this was a close case. In essence, the defense asked the jury to find that Officers White and Cuadrado fabricated their eyewitness testimony, a class D felony under the Delaware Criminal Code, despite Watson's status as a convicted felon and obvious self-interest, Omisha's written acknowledgement of Watson's guilt, and Asha's seemingly inconsistent account that she never even saw Omisha during the incident. It was reasonably predictable that the jury would return guilty verdicts.[24]

(23) Given the numerous implausible determinations the defense urged the jury to make, Watson has not demonstrated that the admission of his prior firearm conviction prejudiced the jury's consideration of the evidence.

---

[23] *See, e.g. Starling v. State*, 130 A.3d 316, 333 (Del. 2015).

[24] *Watson*, 303 A.3d at 50.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice